DE RIDDER *against* M'KNIGHT.

*Whether a contract for a sale of chattels has been completed, is a question of fact for the jury, and the plaintiff ought not to be nonsuited on the ground that the contract was not fully made out. Where on a sale of land the vendee also agrees to purchase certain ponderous articles on the premises, and then enters into possession of the land, the articles sold still remaining upon it, this is a sufficient delivery.*

IN ERROR to the court of common pleas of the county of *Washington.*

The plaintiff in error, who was also plaintiff in the court below, brought an action of assumpsit against the defendant to recover the price of a set of grist-mill stones. On the trial in the court below, one *Barber* testified, that, on the sale of a farm by the plaintiff to the defendant, the defendant applied to the plaintiff for the purchase of a set of grist-mill stones, which it was understood did not pass with the land; that the plaintiff informed the defendant that he had bargained with one *Tifft* for the sale of the stones, but agreed, that, if *Tifft* would relinquish the bargain, the defendant should have them at the price agreed to be given by *Tifft*, which the witness understood to be about 70 dollars; that the defendant solicited the plaintiff to obtain *Tifft's* relinquishment, and agreed to pay for that purpose, if demanded, a sum not exceeding five dollars. The witness stated, that he understood from the conversation, that, if the plaintiff procured *Tifft's* relinquishment, the defendant was to take the stones according to the agreement.

*Powell*, another witness, testified as to a conversation between the parties at the time of executing the deed for the premises above mentioned, in which the plaintiff asked the defendant if he intended to take the mill stones; that the defendant answered he would rather not; but that it was then agreed that the plaintiff should procure *Tifft's* relinquishment of the bargain, for which the defendant should pay, in addition to the price of the stones, which was declared to be 75 dollars: that the defendant agreed to accept a horse in payment, provided the horse suited him.

*Brewer*, another witness, testified, that in the spring subsequent to the autumn in which the defendant purchased the plaintiff's farm, the defendant requested the witness to inquire of the plaintiff whether he had obtained *Tifft's* relinquishment of the bargain; that the plaintiff informed him that he had obtained it, which the witness mentioned to the defendant, who expressed his satisfaction; that the defendant, afterwards, requested the

witness to ask the plaintiff whether he was willing to receive NEW YORK, payment in a horse. The witness also stated, that the mill stones May, 1816. had remained on the premises since the farm was purchased by DE RIDDER the defendant, and were there still.

M'KNIGHT.

This evidence having been produced on the part of the plaintiff, the defendant's counsel moved for a nonsuit, on the ground that there was no bargain in fact made between the parties, and that if there were, it was void by the statute of frauds. The court below thereupon directed the plaintiff to be nonsuited; and a bill of exceptions being tendered to the opinion of the court, it was removed into this court by writ of error.

*Wendell*, for the plaintiff in error, contended, that there was a sufficient delivery of the articles sold, within the statute of frauds. (*Elmore v. Stone*, 1 *Taunt. Rep.* 458. *Bailey & Bogert v. Ogden*, 3 *Johns. Rep.* 399. *Rob. on Frauds*, 174—183.)

*Crary*, contra, insisted, that there was no contract of sale concluded between the parties; but if there were any contract, it was void by the statute, there being no memorandum, in writing, signed by the parties, nor any delivery by the vendor and acceptance by the vendee.* The statute applies as well to executory, as executed contracts.†

* 3 *Johns. Rep.* 399.
† *Bennet v. Hull*, 10 *Johns. Rep.* 365.

VAN NESS, J., delivered the opinion of the court.

Whether the bargain between the parties for the sale of the mill stones was completed, or whether it was only *in fieri*, was a question of fact which ought to have been submitted to the jury for their decision. The evidence that the negotiation had been closed, and that the defendant had agreed to purchase, is pretty strong, and the jury would have been warranted to have found for the plaintiff. The greatest difficulty in the case is, whether it appears sufficiently that the plaintiff had procured a relinquishment from *Tifft*, who had previously agreed to purchase the mill stones. From the testimony of *Brewer* it appears, that at the defendant's request he inquired of the plaintiff whether he had procured such relinquishment, who said he had; and that when he informed the defendant of it he "expressed his

satisfaction with the same." 'The fact that the mill stones have remained continually in the plaintiff's possession, without any claim on the part of *Tifft*, or any other person, affords a strong presumption that *Tifft* had renounced any pretensions he might have had to them. The agreement between the plaintiff and *Tifft*, in fact, presented no legal obstacle to the sale to the defendant, because there is no evidence of any delivery to *Tifft*, nor that he ever paid any part of the consideration money. Indeed, from the bill of exceptions, it is evident there was neither delivery nor payment. These remarks serve to show the propriety of submitting all the evidence to the jury, in order that they might have drawn the proper conclusions from it. If there was an absolute contract on the part of the plaintiff to sell, and on the part of the defendant to buy, the delivery was abundantly sufficient. The articles sold were ponderous, and there has been the only delivery of them which was practicable. They were left on the land purchased by the defendant, which was in his possession, and there they have since remained, in his power, and subject to be used by him whenever he pleased. The presumption, perhaps, is, that he has kept them in pursuance of the purchase made by him; for if he did not, why did he, shortly after the time he sent *Brewer* to the plaintiff to inquire about *Tifft's* relinquishment of his purchase, request *Brewer* to ask the plaintiff whether he was willing to receive payment for the stones in a horse? The court are, therefore, of opinion, that the judgment below ought to be reversed, and that a *venire de novo* be issued by the court below.

Judgment below reversed.