## KELSEA *v.* HAINES.

In an action of trespass for carrying away the plaintiff's lumber, the defendant justified the taking, as an officer attaching the lumber as the property of one Clark. It appeared that the plaintiff had purchased certain lumber of Clark, a portion of which had been delivered on his land, and some of it used by him; another part of it had been

marked by himself, before it was attached by the defendant. It was *held*, that it was proper matter of fact for the jury to determine whether the lumber had been delivered and accepted by the plaintiff, according to the original contract and intent of the parties, or whether the contract remained incomplete, the lumber not having been measured, or the amount thereof fully ascertained before the attachment.

TRESPASS, by Jonathan K. Kelsea against Milo E. Haines, for carrying away the plaintiff's lumber. Plea, not guilty, with a brief statement that the defendant, being a deputy-sheriff, took the lumber as the property of J. L. Clark, on writs in favor of Webster and Blaisdell against said Clark, and, at the time of the taking, the lumber was the property of Clark, and the defendant afterward sold and applied the same on executions issued on judgments recovered in those suits.

To prove the lumber in question to be his property, the plaintiff testified, in substance, that he and his partner agreed to do and did a job of joiner work for Clark, for which they were to receive and he to pay such lumber as they wanted. It was understood that the plaintiff was about to erect a house and barn, and that he should want certain dimension timber to be used in them. It was agreed Kelsea should have the lumber on account of the firm, at the going price. Some time afterward Kelsea gave Clark a schedule of lumber for a barn, and another for a house. Clark was to deliver the lumber on Kelsea's building lot, in Warren village, and he hauled several loads of dimension timber, which, so far as he examined, were got out agreeably to the schedules furnished him by the plaintiff, between June and October 25th. Kelsea was present, and helped unload the first and fourth loads, and also the three last loads, and measured some of the sticks, found them to correspond with the schedule, and told Clark they were good lumber, and he should take them.

The plaintiff testified that he understood it was agreed

that when Clark had delivered the full schedules, the quantity was to be ascertained and the price fixed, and the amount applied upon Clark's debt to the plaintiff and his partner. Their bargain had not been changed. The quantity hauled by Clark had never been ascertained, nor the price fixed, nor any application made upon Clark's debt. At a time when he desired to build his barn for immediate use, Clark told him to use the timber as he hauled it. He did not use it in buildings, but used some of the boards for covering shingles, &c. He assisted Clark in piling part of the timber as it was delivered, and a part he piled over in Clark's absence to keep it straight, and to have it where he wanted to use it, and to separate the house lumber from the barn. Clark did not haul the whole schedules, and at the time of the attachment Kelsea did not know how much he had hauled, but, by comparing the sticks checked upon the schedules by Clark, he computed the quantity, being 8,947 feet; but the defendant did not take away the whole of it. He had not credited the lumber to Clark, or in any way settled with him for it. He also testified that, at the time of the delivery on his land, he considered the lumber all his, and intended to use all of it. Clark stated in substance the same, and that he supposed that Kelsea, by right, could take and use the lumber as soon as he had hauled it; that as he hauled the lumber, he checked the sticks upon his schedule. He supposed Kelsea was to take his measurement of the lumber, and they might agree upon the price at any time. Kelsea was to use this lumber that season. He wished to use the lumber for the barn before haying, and to have it drawn so that he could use it for that purpose. The understanding he had was that he might use the lumber as fast as it was drawn. He testified that he considered he had no claim on the lumber after it was delivered; knew Kelsea put some of the boards into his fence, and made no objection, because he

Kelsea *v.* Haines.

considered Kelsea had a right to use them. He saw some of the boards over Kelsea's shingles. He understood Kelsea might use the lumber. He did not know that he said so to him in so many words, but it was his impression he told him he might go on and use it. He had not computed the amount at the time of the attachment, and no part of the lumber had been measured by a sworn surveyor. There was other testimony corroborating the testimony of these witnesses. The defendant testified that the plaintiff told him before and on the day of the attachment, that he did not know how much lumber Clark had hauled upon his building spot, he had not examined its quality, he should not take it unless it was according to contract, nor a part, unless the whole was delivered; that no price was agreed upon; that he should like to hold it, for Clark was owing him and his partner, and had agreed to get out a schedule of lumber in part payment. The plaintiff told him his contract with Clark, but he did not understand the plaintiff that he claimed the lumber as his. The plaintiff denied that he had made to the defendant any such statements, and testified that he told the defendant, upon the occasion of the conversation mentioned by him, that he had bought the lumber and had paid for it, and supposed it to be his. It was admitted the defendant was a deputy sheriff.

Evidence relating to the value of the lumber was introduced on both sides, the plaintiff showing it above forty dollars.

The defendant asked the court to instruct the jury: (1) That, under the statute of frauds, there was not sufficient evidence to constitute a delivery by Clark, or an acceptance by Kelsea; (2) If, in accordance with the contract, the value of the lumber, after the full schedule had been delivered, the quantity learned, and the price fixed, should have been applied upon Clark's debt to Kelsea and his partner, the property did not pass until that applica-

tion was made, and Clark did not waive his right to have the application made by neglecting to exact its performance; (3) The agreement that the value of the lumber should be applied upon the preëxisting debt of Clark, cannot be regarded as a payment to Clark, answering the requirements of the statute of frauds; (4) If the plaintiff had said that certain parts of this.lumber were according to the schedule, and he would take them, it was language looking to acts to be done in future, for the purpose of carrying out the contract, and does not constitute an acceptance, much less the actual receipt, which the statute requires.

The court did not charge as requested, but instructed the jury that, to constitute a sale, which shall immediately pass the property, it is necessary that the articles should be ascertained, and there should be a price ascertained or ascertainable; yet that the parties may agree that the property shall pass at once upon delivery, though the quantity or the price is not settled, or the whole quantity is not delivered, or though no settlement or adjustment be made relative to the payment of the price. If the terms of the contract are not agreed, or are in dispute between the parties, the question must always be what was the intention and agreement of the parties in this respect. The jury would, therefore, consider the evidence, and find whether, by the intention and understanding of the parties, there remained any act or acts to be done in order to make a complete and perfect sale; in which case they should return their verdict for the defendant; or whether it was the understanding and intention of the parties that the property of the lumber in question should pass to and vest in the plaintiff, notwithstanding certain things remained to be done to determine the quantity and price of the property, and the settlement of the price; in which case they should find their verdict for the plaintiff.

The jury returned a verdict for the plaintiff, and the defendant moved that it might be set aside, by reason of said omission to charge as requested, and of the instructions given to the jury.

*T. J. Smith,* for the defendant, to show that the contract was incomplete, and that no property had legally vested in the plaintiff in the property attached, cited as authorities: *Davis* v. *Hill,* 3 N. H. 381; *Messer* v. *Woodman,* 22 N. H. 172; *Ward* v. *Shaw,* 7 Wend. 404; Ch. on Con. 375, 380, 390; *Fuller* v. *Fuller,* 29 N. H. 128; *Shumway* v. *Rutter,* 7 Pick. 56; *Lanfear* v. *Sumner,* 17 Mass. 110; *Macomber* v. *Parker,* 13 Pick. 183; 2 Kent Com., 496; *Barrett* v. *Prichard,* 2 Pick. 512; *Fuller* v. *Bean,* 34 N. H. 290; *Shepherd* v. *Pressey,* 32 N. H. 49; *Whitwell* v. *Vincent,* 4 Pick. 449; *Chaplin* v. *Rogers,* 1 East 192; *Hambleth* v. *Tollman,* 14 Me. 403; *Burrows* v. *Stebbins,* 26 Vt. 659.

*H. Hibbard,* for the plaintiff, argued that there was a delivery of the lumber into the plaintiff's hands and possession, upon his own land, in the place stipulated in the previous bargain; and the jury found there was such an acceptance of the whole or a part of the lumber, as would take the case out of the statute of frauds. The question now arises as to the correctness of the instructions given by the court to the jury, involving the question of the competency of the evidence, for the purpose of showing an acceptance. We submit they were correct. *Macomber* v. *Parker,* 13 Pick. 175; *Messer* v. *Woodman,* 22 N. H. 180; *Gilman* v. *Hill,* 36 N. H. 311; *Riddle* v. *Varnum,* 20 Pick. 280; *Shepherd* v. *Pressey,* 32 N. H. 49; *Chaplin* v. *Rogers,* 1 East 192; Ch. on Con. 390; 2 Pars. on Con. 324.

NESMITH, J. It is very difficult to lay down any general rule that can bind or control parties, in cases like this before us. The defendant contends that the sale of the

lumber in dispute from Clark to the plaintiff was incomplete; therefore no title to it passed which can affect the rights of Clark's creditors. In a recent case of this kind, *Gilmour* v. *Supple*, Amer. Law Reg. 1859, 245, Justice *Creswell* remarks : " It is impossible to examine the decisions on this subject, without being struck with the ingenuity with which sellers have contended that the property in goods contracted for had or had not become vested in the buyers, according as it suited their interest; and buyers and their representatives have with equal ingenuity endeavored to show that they had or had not acquired the property in that for which they had contracted ; and judges have not unnaturally appeared anxious to find reasons for giving a judgment which seemed to them most consistent to natural justice." Under such circumstances, it cannot occasion much surprise, if some of the numerous reported decisions have been made to depend upon very nice and subtle distinctions, and if some of them should not appear altogether reconcilable with others. We find no better defined rule for this case than Chancellor Kent's. (2 Com. 504.) " The good sense of the doctrine on this subject would seem to be that, in order to satisfy the statute of frauds, there must be a delivery of the goods by the vendor, with an intention of vesting the right of possession in the vendee, and an actual acceptance by the vendee, with the intention of taking possession as owner." What was the actual agreement of the parties, their intention in accepting and delivering the lumber, was the true issue between them, and was properly submitted to the jury for their inquiry and decision. Delivery is only evidence of a sale. When a sale is *bonâ fide*, and for a valuable consideration, slight evidence of a delivery is sufficient to change the property. But there must not only be an act, but an act intended for that purpose. Where the article is selected and set apart, with the assent of parties, as the thing purchased,

a title passes. Hill. on Sales 88. It is a question of fact for the jury whether there has been a delivery by the seller, and an acceptance by the buyer, intended by both parties to have the effect of transferring the right from one to the other. *Phillips* v. *Bertolli*, 2 B. & Cr. 511 ; *Marlow* v. *Maples*, 1 Taunt. 141 ; *Chaplin* v. *Rogers*, 1 East 192. Whether a contract of sale has been completed is a question for the jury. The court will not order a non-suit for want of full proof of the contract. *De Ridder* v. *M'Knight*, 13 Johns. 294. Delivery is held to raise a presumption of a complete sale, and the effect of the circumstance that the property is to be weighed, measured, &c., upon the question of intent, is for the jury. *Cunningham* v. *Ashbrook*, 20 Miss. 553 ; quoted with approbation in Hill. on Sales 147. So, in case of an entire contract to deliver a number of articles at a certain time and place, the vendee is not bound to receive a part of them only, nor to pay for a part, though delivered ; but, if he accept a part, this is a disaffirmance of the entirety of the contract, and he is bound to pay for such part ; and these are proper facts to be found by the jury. Hill. on Sales 109, 110 ; *Waldron* v. *Chase*, 37 Me. 414 ; *Davis* v. *Moore*, 1 Shepl. 424. Where a bill of sale, and a receipt of payment, were given for a quantity of shooks not then manufactured, and a part only subsequently delivered, whether such delivery of part operates as a delivery of the whole depends on the intention of the parties, which is a question for the jury. *Pratt* v. *Chase*, 40 Me. 269 ; *Bates* v. *Conkling*, 10 Wend. 384.

In the case before us, Kelsea and Clark were the contracting parties. Their testimony went strongly to show that a full delivery of the lumber was intended ; that Clark gave up all control to the plaintiff; that the plaintiff expressed himself satisfied with the quality of lumber delivered, told Clark it was good, and that he would take it. The plaintiff helped to unload a number of the loads,

and upon his own land piled portions of it over, measuring some of it ; used some of it for his fence, and covering for his shingles.   Clark told the plaintiff to use the timber, as he hauled it.   The plaintiff had originally agreed to receive this lumber in part payment of labor previously rendered by himself and brother.   The plaintiff had the right to waive the entirety of his contract, and accept of a less quantity of lumber than he had originally contracted for, and the law would bind him to pay for what he actually accepted.   It was competent for the jury, weighing all the facts and circumstances of the case, to find a waiver on the part of the plaintiff, and a sale of the lumber delivered to him, and a binding acceptance by him, according to the actual intent of the parties.   But it is suggested that no sale could be perfected here, as the price had not been agreed on.   The answer is that Kelsea had paid for more than he actually received, and the case finds he was to have the lumber at the "going price."  This, of course, would be the market value of the same at the place and time of delivery.   The law, therefore, regulates this part of the case, establishing the market price as the governing price.   The defendant objects, also, that the lumber was not measured before it was attached, and that here was an act remaining to be done which rendered the contract incomplete and invalid.   Where it becomes necessary, in order to determine the price of goods, to weigh, measure or count them, the rule has been held to apply only where there has been a mere constructive delivery and possession, not where there has been an actual possession.   Thus, where a quantity of goods, agreed to be sold, is delivered, the sale is complete, though they are still to be counted, weighed or measured, in order to determine the sum to be paid for them.   The act of delivery shows that it is intended thereby to complete the sale.  The measuring constitutes no part of the contract of sale, but is merely incidental to it.   Hill. on Sales 145 ;

*Everett* v. *Tindal,* 5 Esp. 169 ; *Sumner* v. *Hamlet,* 12 Pick.
82.   This principle was applied to a case where the seller
was part owner of a large quantity of bricks, and where
he sold his undivided share in the whole.    *Macomber* v.
*Parker,* 13 Pick. 175.   So to a contract to sell all the corn
in a certain mill-house at $2.50 per barrel, a payment of
part of the money vests the property in the purchaser, so
that he can maintain trover for it, even though it was not
measured out to him.    *Morgan* v. *Perkins,* 1 Jones' Legal
Ins. 171.   The principle applies where payment is not a
condition precedent, and where the intention of the parties
is that the sale should be complete.    *Riddle* v. *Varnum,* 20
Pick. 280 ; *Gilmour* v. *Supple,* Law Reg. 259.   So, where
the process of ascertaining the quantity has been substan-
tially performed, the title passes, although a trifling act
remains to be done, in order to complete the enumeration,
espccially if the vendee is in possession, and the remain-
ing act is to be done by him.   Hill. on Sales 148 ; *Tansley* v.
*Turner,* 2 Scott 238 ; *Tyler* v. *Strang,* 21 Barb. ; *Oli-
phant* v. *Baker,* 5 Den. 379 ; *Shepherd* v. *Pressey,* 32 N. H.
50 ; *Gilman* v. *Hill,* 36 N. H. 311.

We are, therefore, of the opinion that the facts of this
case justify the verdict of the jury, and that the law, as
laid down by the judge who tried the cause, was sufficiently
favorable to the defendant.    There must, therefore, be

*Judgment on the verdict.*