META MUHLENBRINCK AND OTHERS, EXECUTORS, ETC., OF JOHN MUHLENBRINCK, DECEASED, APPELLANTS, v. LEWIS J. POOLER AND MARIE T. UPPINGTON, RESPONDENTS.

*Lease — when a covenant for renewal will be construed as not requiring a similar covenant in the instrument of renewal.*

In 1854 the owner of certain premises leased the same for the term of fourteen years from November 1, 1854. The lease provided that the lessee should erect upon the premises four brick dwelling-houses, and that upon the expiration of the term the lessor would either pay to him, his heirs, executors, administrators or assigns, the just and full value of the buildings, or such of them as should remain on the premises, or would grant to him or them a new lease for a further term of fourteen years at a rent to be agreed upon by the parties or determined by appraisers. It then declared that the "new lease shall contain covenants, conditions and agreements, the same as those herein contained."

*Held*, that but one renewal was provided for, and that the new lease need not contain the covenant for renewal.

The authorities bearing upon this question considered and held to indicate the disposition of the courts to have been to depart from the rule of construction adopted and followed in the earlier cases, and to restrict the right of the tenant to one additional term, unless the lease itself contains an express stipulation that the second lease shall contain a covenant for a further renewal or for the creation of one or more succeeding terms.

APPEAL by the plaintiffs from an interlocutory judgment, directed by the court upon a trial of this action at the Special Term

*Nelson Smith*, for the appellants.

*George Bliss* and *J. M. Hunt*, for the respondents.

DANIELS, J.:

The testator brought this action to secure a lease for a second term of the premises situated on the corner of Elizabeth and Spring streets, in the city of New York. At the time when the action was brought the premises were owned by the defendants Peter McDonough, Marie Therese Furey and Lewis J. Furey. The original lease was executed by Mary Davey, who was at the time the owner of the leasehold premises, and it was given for the term of fourteen years from the 1st of November, 1854. The lessee occupied the premises under the lease for that term, and since then for a succeeding term of fourteen years, and deeming himself to

be also entitled to a third term for a like period this action was brought to secure the execution of a lease for the second term, with the same covenants contained in the lease of the first term. During its pendency McDonough departed this life, and upon his decease the defendant Lewis Furey became entitled to the lot devised to McDonough for life, as well as another lot in which he was previously vested with the title, and the third was devised to Marie Therese Furey for her life. During the action the name of the defendant Lewis Furey was changed to Lewis J. Pooler, and Marie Therese intermarried with George Uppington. Neither of the defendants except Lewis J. answered the complaint; but he being an infant an answer was served in his behalf by his guardian *ad litem*. This answer was in the ordinary form, submitting his rights and interests to the protection of the court. A reference was thereupon ordered to a referee in the first instance to examine and report the facts to the court, with his opinion thereon. This was afterwards supplemented by a succeeding order, directing the referee to report all the evidence already taken and such as he might take pursuant to the second order, with his opinion. The referee accordingly took the evidence offered by the parties, and with his opinion reported it to the court. Exceptions were filed to his conclusions on behalf of the two defendants, Lewis J. and Marie Therese. These exceptions were so far sustained that judgment was ordered in their favor, and a further reference directed to ascertain the value of the use and occupation of the property since the 1st of November, 1882, and directing the plaintiff also to account for the rent unpaid at that time.

The objection has been taken, on behalf of the plaintiff, that the court, at the hearing which took place at the Special Term, was concluded by the facts deemed by the referee to have been supported and proved by the evidence. But as the case was not referred to him to hear and determine it, but merely to take proof and return it to the court with his opinion upon it, this objection is not well founded.

The reference was ordered not to determine the facts in the case, or the rights of the parties, by the action and conclusion of the referee, but to supply the court with information upon which itself could intelligently act and adjudge the rights of the parties. When

the case was brought before the court subsequent to the hearing and report of the referee, it was presented for its examination and decision upon the evidence which had been taken, and the facts that evidence was found to have proved. It was for the court to determine what were the rights of the parties upon the proof, which in this manner had been obtained. It, therefore, proceeded regularly in considering and determining whether, upon the evidence produced, the plaintiff was entitled to recover in the action.

The power to do that was not excluded by the omission of one of the defendants to answer the complaint. For, as the facts were stated in it and ascertained upon the reference, the question was still presented whether the plaintiff was entitled to a lease with all the covenants of the first for another term of the leasehold property. The court considered the evidence, as well as the facts established by it, and concluded that the plaintiff was not entitled to another lease of the property with all the covenants contained in the first. And it is this determination by which the rights of the parties were disposed of at the hearing. Whether the plaintiffs, as the executors of the lessee, were entitled to a lease containing all the same covenants for another term, must depend entirely upon the construction to be given to the first lease. By this lease the lessee was obligated to erect upon the leasehold premises, within two years from its commencement, four or more good and substantial brick dwelling-houses, and the evidence proved that obligation to have been fully performed by him. Upon the expiration of the term, it was then provided that the lessor would either pay to him, his heirs, executors administrators or assigns, the just and full value of the buildings, or such of them as should remain on the premises, or would grant to him or them a new lease for a further term of fourteen years. The rental for the new lease was to be ascertained and determined either by the agreement of the parties, or the decision of appraisers selected for the purpose of appraising the valuation of the property, and the rent was to be six per cent upon that valuation, provided, however, that it should not be less in any event than the rent reserved for the first term. It was then declared in the lease that the " new lease shall contain covenants, conditions and agreements, the same as those herein contained."

And it is upon this stipulation that the tenant predicated his

right to a new lease, identical with the first, for a second leasehold term in the property. And authorities have been relied upon, which, if they could at the present time be followed, would sustain this claim. For in *Bridges* v. *Hitchcock* (5 Brown's Parliamentary Cases, 6), it was held that such a stipulation or covenant in a lease entitled the lessee to succeeding leases with all the original stipulations, and that the lessee could demand from the lessor, his heirs, etc., such succeeding leases in perpetuity. This authority was afterward followed in *Furnival* v. *Crew* (3 Atkyns, 83), and in *Cooke* v. *Booth* (2 Cowper, 819). The subject was also considered in *Copper Mining Company* v. *Beach* (13 Beav., 478). But there the covenant was that the lessor would always, at any time, when and as often as required, renew the lease, which gave expression to the obligation much more favorable to the tenant than the phraseology of the lease in this action. The point was likewise considered in *Iggulden* v. *May* (9 Ves., 324), but it was left undecided by the chancellor, who suspended the action until a trial could be had and a construction given to the lease, in an action at law. That trial afterwards took place, and the court held that the tenant was not entitled to an indefinite renewal of the term, but that he was limited to one additional term of twenty-one years, notwithstanding the fact that the lease provided that the succeeding lease should contain " all covenants, grants and articles, as in the said indenture or lease were contained, and particularly such covenant for renewal as is contained therein." (*Iggulden* v. *May*, 7 East, 237.) This is an extreme decision, marking a wide departure from the principal upon which the case of *Bridges* v. *Hitchcock* was decided, both in the Court of Chancery and the House of Lords, and it was characterized by a disposition to restrict the right of the tenant to but one additional term even when the language of the lease, if full effect had been given to it, would have entitled him to other succeeding like terms in the property. In the case of *Willan* v. *Willan* (16 Ves., 72), the lease covenanted for a renewal for a further term, and so on forever, or so long as the testator or his assigns, etc., should hold the property, and this was considered by the chancellor, as it certainly was, to be sufficient to require repeated renewals. But there the language of the lease was such as plainly to express that obligation, while in this case it.

failed to declare the intention of the parties in the same or any other equivalent manner. For what was agreed upon in the lease in suit was, that a new lease of the premises should be granted, and that it should contain covenants, conditions and agreements, the same as those contained in the first lease. What the parties appear to have contemplated was one additional term in the premises, and the language which they used to express their intention was not enlarged by the obligation to which the tenant was subjected, of rebuilding the buildings in case of their destruction by fire or otherwise. For the portions of the lease providing for a renewal, or the creation of another term, were in no manner referred to or enlarged by that part of it which was inserted to create this obligation. But the right to the additional lease or term remained dependent upon what had been before inserted in the lease. And it has been the policy of the courts since the earlier decisions, to which reference has been made, were pronounced, to consider stipulations or covenants of this description in such a manner as to limit them to one additional term.

The rule of construction became settled at an early date that a covenant for renewal, or for an additional term, should not be held to create a right to repeated grants in perpetuity, unless some sufficient consideration for such grant was made to appear, and the parties had expressed themselves upon this subject in language devoid of all ambiguity. The case of *Shepard* v. *Dulan* (3 Drury & Warr., 1) has been cited as another authority requiring a more enlarged principle of construction to be applied to the language contained in the lease. But it does not, for the lease in that case contained no obligation requiring the second to include the right of renewal mentioned in the first. And the same is true of *Harnett* v. *Yielding* (2 Sch. & Lefr., 549).

The case of *Iggulden* v. *May* (7 East., 237) is very decisive authority against the construction required to maintain the plaintiff's action. So is that of *Tritton* v. *Foote* (2 Brown C. C., 636), where the stipulation for the new lease provided that it should be subject to the same rents, covenants, reservations, conditions and agreements in all respects. The language in that case was more comprehensive than in the present lease, and still it was held to entitle the lessee to no more than one additional term. In *Hyde*

v. *Skinner* (2 P. Wms., 196), which proceeded upon a similar lease, the ruling was the same, and that of *Baynham* v. *Guy's Hospital* (3 Ves., 295) is equally as decisive against the rule of construction relied upon by the plaintiffs. This, it is true, was decided not by the chancellor, but by the master of the rolls. But the same view was approved by the chancellor in *Moore* v. *Foley* (6 Ves., 234). The lease, however, in that case was much broader in its language, providing for successive renewals as often as any of the lives mentioned in the first lease dropped out. And that was entirely consistent with the right to repeated renewals of the same term.

In *Browne* v. *Tighe* (8 Bligh, 286); *Piggot* v. *Mason* (1 Paige, 412); *Rutgers* v. *Hunter* (6 Johns. Chy., 215); *Carr* v. *Ellison* (20 Wend., 178); *Abeel* v. *Radcliff* (13 Johns., 296); *Banker* v. *Braker* (9 Abb. N. C., 411); *Cunningham* v. *Pattee* (99 Mass., 248), the same subject was considered, but under leases not as broad in their covenants as this lease, or as the leases in many of the other authorities. But in all of them the courts referred to the rule as established, which has been maintained by the modern authorities, excluding the right to more than one renewal under language similar to that contained in this lease. These authorities indicate the disposition of the courts to have been to depart from the rule of construction adopted and followed in the earlier cases, and to restrict the right of the tenant to one additional term, unless the lease itself contains the express stipulation that the second lease shall contain a covenant for a further renewal, or the creation of one or more succeeding terms. The principle sustained by these authorities is obligatory upon the plaintiffs in this action, and excludes the right to another lease with covenants for a third term in the leasehold property; and for that reason this action so far cannot be sustained. There are, as has already been stated, certain attributes in the present case that did not enter into many of those sanctioning this restriction of the law. But they are not such as would, in view of the strong expressions made use of by the courts in the decisions in the later cases, justify a departure from the principle upon which they have proceeded.

In no manner was the claim brought into the case that the plaintiffs or the lessee had become liable for rent for the occupancy of the premises during a portion of the second term, or since the expi-

ration of that term. No defense or claim of that description was, in any form, brought into the case by the pleadings, and there was no foundation for the reference ordered to ascertain the extent of the obligations of the plaintiffs for rent in arrear.

As to that part of the judgment it was unauthorized and it should be reversed, but as to the residue, as the second term had already expired, the judgment should be affirmed, but without costs of the appeal.

BRADY, J., concurred.

Judgment affirmed, without costs.