(117 App. Div. 775)

In re PAUL JONES & CO.

(Supreme Court, Appellate Division, Second Department. March 1, 1907.)

1. ATTORNEY AND CLIENT—ACTIONS FOR MONEY COLLECTED—EVIDENCE.

    Evidence on a petition to compel an attorney to pay over the amount of money alleged to have been collected by him as attorney for petitioner examined, and *held* to show that nothing had been paid him on account of petitioner's claim.

2. REFERENCE—PROCEEDING BEFORE REFEREE—RECEPTION OF EVIDENCE.

Where, on a petition to compel an attorney to pay over money collected by him as such, a reference was ordered, and the referee directed to take the testimony and report it to the court, with his opinion upon all questions of fact, the referee was not bound to take testimony which appeared to him not relevant to the issue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Reference, § 94.]

3. EVIDENCE — SIMILAR FACTS — ATTORNEY AND CLIENT — MONEY COLLECTED—OTHER FAILURES TO ACCOUNT.

Where, on a petition to compel an attorney to pay over money collected by him as such, the attorney denied ever receiving the money at all, and there was no charge other than that he had received the money and withheld it, evidence that he had collected moneys for other clients for which he did not report to them, and that application had been made to the court to compel restitution of those moneys, was inadmissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 403.]

4. REFERENCE—PROCEEDINGS BEFORE REFEREE—REPORT—SEPARATE FINDINGS.

Under Code Civ. Proc. § 1022, providing that the report of a referee on the trial of the whole issues of fact must state separately the facts found and conclusions of law, a report of a reference is valid, notwithstanding it does not separately state the facts found and conclusions of law, unless there has been a trial of the whole issues of fact.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Reference, § 134.]

Appeal from Special Term, Queens County.

Application by Paul Jones & Co. to compel the payment by their attorney, Frederick L. Gilbert, of money received by him as such. From an order confirming the referee's report, Paul Jones & Co. appeal. Affirmed.

See 100 N. Y. Supp. 1133.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

S. S. Myers, for appellant.

George Wallace, for respondent.

JENKS, J. ·This appeal is from an order confirming a referee's report and from "the judgment in said proceeding." The appellant petitioned that Gilbert, as an attorney in charge of its claims against Minister, be compelled to pay over to it $142, with interest, or be punished for contempt. The ground of the petition was that Gilbert had collected said sum upon a claim. Upon the hearing the Special Term ordered a reference to Henry A. Monfort, Esq., to take such evidence and testimony as might be offered by the respective parties, and to report, with his opinion upon all questions of fact arising upon said motion, and particularly whether the sum of $142, or any other sum, was actually paid by said Minister to Gilbert on account of Minister's indebtedness to the petitioner. Accordingly the referee reported that the only question litigated before him was whether the sum of $142, or any other sum, had been actually paid to said Gilbert on account of the indebtedness of Minister to petitioner, and that in his opinion, based on the evidence, Minister neither paid said sum, nor any other sum, on account of said indebtedness. The Special Term confirmed the report and dismissed the proceeding, with costs, and thereupon "a judgment" was entered that the proceeding be dismissed and Gilbert have judgment against the petitioner for costs.

The reference was but to inform the conscience of the court, and the court could adopt or disregard the report of the referee. Marshall v. Mecch, 51 N. Y. 142, 10 Am. Rep. 572; Muhlenbrinck v. Pooler (Sup.) 40 Hun, 526. The report, however, was entitled to the careful consideration of the court, mindful of the fact that the referee saw and heard the witnesses, with all the advantage that is gained by that personal contact. The delivery of a witness and the record of his delivery are two distinct things, and the hearer of evidence has a great advantage over the reader thereof. The temperament, the manner, and the method of a witness, as well as his words, are valuable indications as to whether he is positive when he should have doubt, or whether he mistakes or misstates, not to say perverts or prevaricates. I do not intend any peculiar application of these words to the witnesses in this case. A reading of the testimony does not convince me that the Special Term erred in adopting the report of the learned referee. The affiants upon the petition were the attorneys of the petitioner and their employés, or the employés of the petitioner. They deposed to statements by Minister that he had paid the amount of the claim to Gilbert, and to admissions by Gilbert to that effect, and to his promise to settle. The opposing affidavits were made by Gilbert and by Minister. The hearing before the referee consisted in the taking of the evidence of some of the petitioner's affiants and of Gilbert and Minister. The witnesses for the petitioner were Monheimer, a law clerk in the office of the petitioner's attorneys, Lithauer, an associate attorney, and Crain, a traveling salesman of the petitioner.

The case of the petitioner rests upon admissions of Minister and of Gilbert. There is proof that Minister had said that he had paid Gilbert on account of the claim, but there is no direct proof that Gilbert in so many words admitted that he had collected the money from Minister upon that claim. Lithauer does testify that Gilbert, in the presence of Minister, when told of Minister's statement, said to Minister, "Bill, you ought not to have said anything about that;" then when Lithauer asked for a check, he replied that he would discuss the matter with the witness; that in such discussion he informed the witness "that he would send Paul Jones & Co. a check for the sum of $142, which he had colllected from Minister, within ten days." Crain testifies that, after the claim had been placed in Gilbert's hands, Gilbert asked Crain to ask the clients "to let up," not to annoy him with letters about the claims, saying, "You know I will pay this all right." Gilbert testifies that when he was asked, in March, 1903, by Lithauer, if Minister had paid him any money on account of the claim, he answered that he had not, and, when Lithauer said that he had understood to the contrary, the witness said that there was a matter of $142 which he had agreed with Minister to turn over on account of the claim as soon as convenient, which he thought would be within the next 10 days, and that he explained the circumstances, asserting that no money had been paid to him by Minister directly. The alleged admissions are denied by Gilbert and by Minister.

Much of the details as testified to by the plaintiff's witnesses are reconcilable with the version of Gilbert and Minister, namely, that Minister, being asked for money by Gilbert as attorney for the petitioner,

requested Gilbert to apply on the claim $142 then owed by Gilbert to Minister, and that Gilbert said he would do so and did not keep his promise, but that, when Gilbert was proceeded against as for money actually collected, he showed that he did not then owe anything to Minister. Gilbert and Minister, under searching cross-examination, gave the details of the said indebtedness and of its discharge. It was natural enough that Gilbert, while thus indebted, should have acted as if he intended to thus discharge his debt to Minister by payment on his account to the petitioner, and that those with whom he talked jumped at the conclusion that he had actually collected the money. The testimony that Gilbert said that he would send the clients a check for $142 "which he had collected from Minister" may well be the narrative of the witness as descriptive of the money, or as his understanding of the statements of Gilbert. In any event, it is not a clear, distinct statement of an admission by Gilbert. The evidence of Crain that Gilbert said to him, "You know I will pay this all right," is that such saying was after the time the claim was put in Gilbert's hands, but not after the incident in regard to the payment, so that it is entirely consistent with the theory that Gilbert did not wish to be irked by letters of insistence or inquiry, but that he would pay the claim as soon as he collected it.

The appellant insists that the referee erred in a ruling upon the evidence. Gilbert, the attorney, under cross-examination was asked:

"Q. There are other clients of yours, Mr. Gilbert, are there not, who are making claims that you have collected money for which you did not report to them. (Objected to. Objection sustained. Exception.)"

And again he was asked:

"Q. I ask you again, and request you to ask your attorney not to object to the question: Have not other or another application been made by clients of yours to compel the restitution of money collected by you and not turned over to those clients? (Objected to. Objection sustained. Exception.)"

The referee, having been ordered to report the evidence with his opinion, was not bound to take testimony which appeared to him as not relevant to the issue. Rumsey's Practice, 364; Matter of Silvernail, 45 Hun, 575. The rule seems otherwise if he had been ordered to take the testimony only. Fox v. Moyer, 54 N. Y. 125. I think that the learned referee did not err in his ruling. The general rule is that an offense is not proven by proof of another offense, and that such proof is not relevant upon a legal doctrine of probabilities. The principle of the rule obtains in both civil and criminal cases. Wigmore on Evidence, § 370. Moreover, although this is not a criminal proceeding, it involves an act of tortious taking which might be the basis of criminal action. In Regina v. Stephens, 16 Cox, Crim. Cas. 395, Manisty, J., quotes Roscoe's Digest of Evidence, p. 94, as follows:

"There are cases in which much greater latitude is permitted, and evidence is allowed to be given of the prisoner's conduct on other occasions, where it has no other connection with the charge under inquiry than that it tends to throw light on what were his motives and intention in doing the act complained of. This cannot be done merely with the view of inducing the jury to believe that, because the prisoner has committed a crime on one occasion, he is likely to have committed a similar offense on another, but only by way of anticipa-

tion of an obvious defense, such as that the prisoner did the act of which he was accused, but innocently and without any guilty knowledge, or that he did not do it because no motive existed in him for the commission of such a crime, or that he did it by mistake."

I think this is a clear statement of the principle, and the case is cited in a note to Wigmore, supra. See, too, Ross v. Ackerman, 46 N. Y. 210; People v. McLaughlin, 150 N. Y. 365–384, 44 N. E. 1017, and authorities cited; Townsend v. Graves, 3 Paige, 453; Coleman v. People, 55 N. Y. 81; Stephen's Digest on Ev. (Beers) p. 69.

The learned counsel for the appellant invokes exceptions to the rule which are not applicable to this case. Proof of repetition of an offense negatives the plea of ignorance or accident which may be ascribed to an isolated act, or it may indicate that the act under investigation is one of a series of acts articulated by a fraudulent design. The rule and the exceptions are discussed in detail by Werner, J., in People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. See, too, People v. Weaver, 177 N. Y. 434, 69 N. E. 1094. The testimony sought to be drawn out by the question was not relevant in this case, because there was no defense that admitted the collection of the money; but there was an absolute denial thereof, while, on the other hand, there was no assertion other than that Gilbert had received the money and had withheld it. So that there was neither occasion for proof of other isolated acts with reference to third persons, to rebut a plea of ignorance or accident or to, establish a systematic course of wrongdoing. Darling v. Klock, 33 App. Div. 270, 53 N. Y. Supp. 593, affirmed 165 N. Y. 623, 59 N. E. 1121, Beuerlien v. O'Leary, 149 N. Y. 33, 43 N. E. 417, Naugatuck Cutlery Co. v. Babcock, 22 Hun, 481, Converse v. Sickles, 16 App. Div. 49, 44 N. Y. Supp. 1080, and many other cases cited by the learned counsel for the appellant, apply in an exception to the general rule, namely, that proof of other offenses is relevant in cases of alleged fraud to establish that intention accompanied the act under investigation. In Hall v. Naylor, 18 N. Y. 588, 75 Am. Dec. 269, the court, per Comstock, J., say:

"On the trial of such an issue, the quo animo of the transaction is the fact to be arrived at; and it is therefore competent to show that the party accused was engaged in other similar frauds at or about the same time."

The distinction made, even in cases of fraud, is clearly pointed out by the court, per Rapallo, J., in Mayer v. People, 80 N. Y. 364, 372:

"The mischief to be guarded against in the reception of this testimony was that the jury might consider it in determining the controverted question whether the defendant in fact made the representations charged to the prosecutor. It would not have been proper to admit it on that issue, and it was not so admitted. On the contrary, at the request of the defendant's counsel, the jury was expressly cautioned by the court that the testimony as to representations made to others had no proper relation to the question whether or not those testified to by the prosecutor were made to him, and that it was admitted on the question of intent solely, and the ground upon which it was admitted on that question was very clearly explained to the jury in the charge, and they were instructed, if they did not believe the representations to others to be part of a general purpose or scheme to obtain goods fraudulently, to disregard them, and not to consider them as independent acts, or permit them to work a mere prejudice against the accused."

The point that the report of the referee does not state separately the facts found and the conclusions of law, as required by section 1022 of the Code of Civil Procedure, is not well made. The statute makes this requirement where the report of a referee is upon a trial of the whole issues of fact, not otherwise. Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152–158, 76 N. E. 1075. In Lederer v. Lederer, 108 App. Div. 228, 95 N. Y. Supp. 623, cited by the learned counsel for the appellant, the reference was to determine the issues, and in that case it was said:

"The purpose stated and designated is, as pointed out in Jefferson County National Bank v. Dewey, 181 N. Y. 98, 73 N. E. 569, to enable the defeated party to take proper exceptions and to enable the court, in case an appeal be taken, to determine what facts the referee did find and whether they sustained the legal conclusions."

I recommend affirmance, with costs.

Order affirmed, with $10 costs and disbursements. All concur.