SIMON GINSBERG REALTY CO., INC., Landlord, *v.* LOUIS GREEN-STEIN, Tenant.*

Municipal Court of New York, Borough of Manhattan, Ninth District, November 8, 1935.

*Samuel Zinman* [*Samuel Feldstein* of counsel], for the landlord.
*William Solomon* and *Daniel Levy*, for the tenant.

*Affd., 158 Misc. 473.

EDER, J. The parties hereto entered into a written lease whereby the tenant hired from the landlord the demised premises in question for the term commencing December 1, 1934, and ending September 30, 1935. The lease contains what has been commonly denominated an " automatic renewal " clause to the effect that it was " extended and renewed " for a further term of one year from the date of its expiration unless either party thereto on or before the first day of May next preceding the date of termination gave notice to the other of an intention not to renew. The provision, *verbatim*, reads as follows:

" *Twenty-fourth.* That this letting and hiring shall be extended and renewed by and against the parties hereto for the further term of one year from the expiration of the term granted hereby, at the same rental without any deduction or concession, and upon all the above terms, conditions and covenants, unless either party on or before the first day of May next preceding the termination of any term granted hereby, shall give notice to the other of an intention to surrender or have possession of the premises, as the case may be. Notice by the Landlord to the Tenant must be given by sending the same by U. S. Registered Mail. Notice by the Tenant to the Landlord must be given by sending the same by U. S. Registered Mail. This clause shall be and continue operative likewise with respect to any renewals or extensions hereof."

Neither party gave notice to the other of any intention not to renew the lease. Hence, under its express provisions it was automatically renewed for a further term of one year. Such an automatic renewal provision has heretofore been recognized as valid and has been enforced (*Cushman & Co.* v. *O'Hara*, 145 N. Y. Supp. 1004), although covenants for continued renewals have not been regarded with favor by the courts. (*Burns* v. *City of New York*, 213 N. Y. 516.) Yet, where the provision is explicit and shows such was the clear intention of the parties, such a covenant for future renewals has been enforced. (*Burns* v. *City of New York, supra.*)

None the less the landlord claims that by virtue of section 230 of the Real Property Law (added by Laws of 1934, chap. 576, effective September 1, 1934) this provision of the lease is inoperative and that the tenant is a holdover and it seeks to recover possession of the demised premises by this summary proceeding. Section 230 of the Real Property Law provides:

" § 230. Certain provisions of leases to be inoperative in certain cities unless express notice thereof is given to tenant. No provision of a lease of any real property or premises located in any city of one million inhabitants, or over which states that the term thereof shall be deemed renewed for a specified additional period

of time unless the tenant gives notice to the lessor of his intention to quit the premises at the expiration of such term shall be operative unless the lessor at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him, shall give to the tenant written notice, served personally or by registered mail, calling the attention of the tenant to the existence of such provision in the lease."

This section of the Real Property Law, it is to be observed, renders such automatic renewal provision inoperative " unless the *lessor* * * * shall give to the tenant " written notice " calling the attention of the tenant " to the existence in the lease of such provision.

The landlord contends that as it did not give such notice to the tenant the automatic renewal provision became inoperative and as the tenant did not give to the landlord notice of his intention to renew, the lease thereby expired on September 30, 1935, and that the tenant remains in possession as a holdover.

I am unable to subscribe to this view. The statute is clear and unambiguous and presents no perplexities as to its purpose and the object sought to be attained by its enactment. It is remedial in character, and was enacted primarily, if not solely, for the protection and benefit of the tenant against unfair practices of the landlord with regard to the inclusion of an automatic renewal clause in a lease, yet, at the same time giving to a landlord ample protection with respect thereto upon his complying with the exceedingly simple requirement of the statute. Being a remedial statute, aimed and intended to correct what was regarded as an inimical condition, it should receive a liberal construction, such as will carry out the intent of the Legislature.

" Remedial statutes generally meet the approval of the courts, and they are liberally construed so as to suppress the mischiefs of the former rule and advance the remedy for those mischiefs." (Book 1, McKinney's Consol. Laws of New York, § 153; *Archer* v. *Equitable Life Assur. Society*, 218 N. Y. 18; 59 C. J. 1106, § 657, Statutes.)

The object of construction is to give effect to the intent of the lawmakers (*Matter of Bowne* v. *Bowne Co.*, 221 N. Y. 28; *Johanns* v. *Ficke*, 224 id. 513), and with the mentioned rules of guidance in mind no difficulty is encountered in disposing of the matter in question.

This statute was designed to prevent the existing practice of incorporating automatic renewal clauses in leases, a practice deemed iniquitous, in consequence of which tenants found themselves bound for an extended term solely through their omission or forgetfulness

to notify their landlords several months anterior to the expiration of the lease of their intention not to renew. This provision was, indubitably, a trap for the unwary or forgetful tenant, and was deliberately inserted in the lease by the landlord for that very purpose. This provision led to much protest and bitter complaint that thereby the landlord took an unfair and unconscionable advantage of the tenant, and to remedy this condition, the Legislature, by the enactment of the statute in question, made it the affirmative duty of the landlord, if he contemplated and intended to avail himself of such automatic renewal clause, to specifically call the tenant's attention to its existence in the lease, so that the tenant would be fully apprised thereof, and forewarned with such notice and knowledge, govern himself accordingly. The burden, the obligation, the duty to give such notice are cast exclusively upon the landlord. Nowhere in the statute is the *tenant* required to do or perform any act under it in order to receive the benefit of its provisions.

I have said that the statute was enacted primarily for the protection and benefit of the tenant. It will be noted that the title thereof relates to express notice to be given *to the tenant,* and while, of course, the title of an act forms no part of the law itself, yet it may be legitimately resorted to as an aid in ascertaining the legislative intent (*Matter of Bowne* v. *Bowne Co., supra*); likewise the text requires the *lessor* to give written notice *to the tenant* calling the attention of the tenant to the existence of the automatic renewal clause in the lease. Both these elements indicate clearly that the statute was enacted as a remedial measure essentially for the protection and benefit of the tenant. The obvious purpose is to prevent the landlord from saddling the tenant with an additional term by the inclusion of this automatic renewal clause in the lease, merely by reason of his omission or forgetfulness to notify the landlord he will not renew. Therefore, if the landlord intends to carry the term beyond the expiration date, he is specifically required to give the tenant such notice. Thus the tenant is given an adequate opportunity to determine whether he will renew or not. If after receiving such notice from the landlord he gives no notice of his intention not to renew, the renewal clause thereupon becomes operative automatically and the tenant is bound for the extended term. It is a reasonable requirement and fair.

The failure or omission of the landlord to give such notice as required by section 230, *supra,* in no way operates to limit or impair or destroy the tenant's right of renewal. Such failure or omission of the landlord visits no penalty upon him. On the contrary the failure or omission of the landlord to give such notice only deprives

him of the right to avail himself of the benefit of the automatic renewal clause. When he fails or omits to give the tenant this notice, it is then optional with the tenant when the landlord seeks to enforce it, to elect whether he will avail himself of the benefit of the renewal clause where, before, he could not do so.

The statute in no way destroys the contractual rights of the parties; they remain unimpaired; it merely imposes upon the landlord a condition precedent with which he must comply before he may proceed to invoke this particular provision.

The landlord urges, with much emphasis, that this statute does not affect only the landlord's rights by the failure to give such notice; that it similarly affects the tenant; that in the absence of such notice from the landlord to the tenant the automatic renewal clause becomes inoperative as to *both* parties; that the statute declares in general terms that such clause shall not be operative, and does not specially declare that it shall be inoperative *only as against the tenant*. Hence, the landlord asserts, it must be held to be inoperative as to both landlord and tenant.

If this construction should follow it would render the automatic renewal clause in the lease wholly inoperative as to both the landlord and tenant and the landlord would be entitled to a final order since the lease would have expired on the fixed date and the tenant would be a holdover. Such a construction, however, would do violence to and ignore the intent, purpose and object of the statute and the end sought to be achieved.

Considering this legislation in the light of its background, its title, the plain language of the text, its remedial character and the object sought to be attained, I think it abundantly clear that the failure or omission of the landlord to give the tenant the prescribed notice was to thereby render the automatic renewal clause inoperative as against the tenant only. The rule of sensible construction is to be applied; and the words of the statute, construed in the light of the legislative object, do not justify the construction or conclusion that the landlord's failure or neglect to give to the tenant the prescribed notice should operate to impair, limit, curtail or destroy any benefits or rights which are his under the automatic renewal clause of the lease.

The failure or omission of the landlord to give the prescribed notice to the tenant did not render the automatic renewal clause inoperative as against him; it rendered it inoperative only as against the tenant if the landlord chose to enforce it and the tenant objected. Moreover, the landlord cannot, by its neglect or failure to comply with the statute, thereby limit or destroy the rights and benefits of the tenant under the lease.

Since, therefore, the renewal clause of the lease remains effective in so far as the tenant is concerned where he so desires it, and elects to disregard the landlord's failure to give such notice, and neither party having given notice to the other of an intention not to renew the lease, it was automatically renewed for the extended term as provided by the twenty-fourth clause of the lease and the tenant is, therefore, not a holdover but is rightfully and lawfully in possession.

It follows from the foregoing views that the landlord cannot prevail. Motion of landlord for a directed verdict is denied; motion of tenant is granted and verdict directed for tenant. A final order is awarded in favor of the tenant and against the landlord, dismissing the petition and proceeding upon the merits and as a matter of law.