JOHN JOHNSON, Appellant, *v.* BRAGER C. BJERREGAARD, Respondent.

Supreme Court, Appellate Term, Second Department, February 20, 1936.

*Boine T. Johnson,* for the appellant.

*William E. Clark,* for the respondent.

BONYNGE, J. In November, 1933, the defendant, as tenant, signed a written lease of an apartment in premises 479 Senator street, Brooklyn, for a term of one year ending December 14, 1934. The rent was thirty-five dollars a month, payable December 15, 1933, and monthly thereafter. This lease contained an automatic renewal clause reading in part as follows:

" 12. That this letting and hiring shall be extended and renewed by and against the parties hereto for the further term of one year from the expiration of the term granted hereby, at the same rental without any deduction or concession, and upon all the above terms, conditions and covenants, unless either party on or before the first day of November next preceding the termination of any term granted hereby, shall give notice to the other of an intention to surrender or have possession of the premises, as the case may be."

It is conceded that the plaintiff, who became the owner of the premises soon after the defendant's lease was signed, gave no notice pursuant to section 230 of the Real Property Law (added by Laws of 1934, chap. 576), which became effective September 1, 1934. As a result the plaintiff was in no position to enforce the renewal clause. At the end of his term, on December 14, 1934, the defendant did not surrender his apartment but continued in possession thereof until June 1, 1935, to which date he paid rent. The defendant claims that he was merely a monthly tenant after December 14, 1934, while the plaintiff contends that he was a holdover and liable as such for a year.

The plaintiff found another tenant for the apartment from August 1, 1935. This action is to recover rent for the months of June and July and also the cost of redecorating under a clause in the lease providing therefor in case the tenant abandons possession. The trial justice, being of opinion that the automatic renewal clause in some way nullified or rendered inapplicable the doctrine of holdover, awarded judgment only for rent for the first half of June, and the plaintiff appeals.

The possible effect of section 230 of the Real Property Law upon holdover tenancies under leases containing automatic renewal clauses, has given rise to no little discussion, and is now squarely presented for decision. A consideration of the quite different purposes of the two principles will tend to clarify the legislative intent.

The doctrine of holdover under a lease is of ancient origin. As early as the eighteenth century, Lord MANSFIELD expressed it in the quaint language of his day, saying " the law implies a tacit renovation of the contract " when a tenant remains in possession beyond the end of his term. (*Right, etc.,* v. *Darby,* 1 Durn. & East, 159.) It was readily and fully accepted in New York and has long been a settled legal principle here. (*Schuyler* v. *Smith,* 51 N. Y. 309; *Haynes* v. *Aldrich,* 133 id. 287.) The doctrine has more than its antiquity to recommend it. If the tenant holds over after the end of his term, and impedes or defeats the landlord's attempt to place a new tenant in possession, it is but simple justice to give the landlord the option to treat the lease as extended.

A century or more later in the development of the law, landlords began to recognize the desirability of obtaining advance knowledge of the intentions of their tenants, and it was in response to this that the automatic renewal clause came into favor with the former. (*Hopkins Realty Co.* v. *Kirschbaum,* 84 Misc. 51; *Hennessy Realty Co.* v. *Bernstein,* 110 id. 331.) While the original

purpose of the clause was doubtless fair, it has since been used to ensnare and oppress in untold instances. A tenant will ordinarily remember the expiration date of his lease, but it is by no means as certain that he will recall some other date two, three or six months prior thereto. As a result of such forgetfulness, all too many tenants have found themselves saddled with onerous and unintended burdens. It was to remedy this evil that the Legislature enacted section 230 and thus placed upon a landlord, desiring to avail himself of the benefits of an automatic renewal clause, the duty of giving timely warning to his tenant.

It is plain that the doctrine of holdover and the automatic renewal clause stem from quite different roots, and there is no logical theory upon which it can be deduced that the Legislature intended, by the enactment of section 230, to abolish holdover tenancies. A landlord who incorporates an automatic renewal clause in his lease and then fails to avail himself of it by giving the statutory warning, thereby manifests his intention not to continue the tenancy, and the clause becomes unenforcible by him. This, however, is far from saying that the tenant will punctually move on or before the last day of his term. He may hold over as unnumbered thousands have done, and in this contingency the landlord will require some remedy against his inability to let a new tenant into possession. In sum, the tenant's liability under an automatic renewal clause grows out of his failure to give notice of intention to terminate a continuing contract obligation, while his liability as a holdover is the just penalty for the breach of his covenant to surrender possession at the end of his term. We hold that the Legislature by ameliorating the plight of the tenant in the one case, has evinced no intention of changing the rule in the other.

Seemingly section 230 has been considered in only one reported case, viz., *Ginsberg Realty Co., Inc., v. Greenstein* (157 Misc. 148), a decision by EDER, J., of the Municipal Court. The point there decided has no application here.

Judgment reversed upon the law and new trial granted, with thirty dollars costs to appellant to abide the event.

CROPSEY and MACCRATE, JJ. concur.