## RUTGERS *against* HUNTER.

A covenant to renew a lease, does not necessarily imply another lease, not only for the same term and rent, but also with all the covenants contained in the former lease, such covenants being accidental, and not essential parts of a lease.

As, where in a building lease for twenty-one years, at a certain annual rent, it was covenanted that, at the expiration of the term, the buildings erected, and improvements made by the lessee, should be valued, in the manner specified in the lease, and if the lessor should not abide by, and pay the amount of such valuation, he should *renew the lease, or redemise the lot, at such rents, and upon such terms, as might be agreed upon between the parties :* At the end of the term, the lessee refused to accept a redemise of the lot, upon any terms, and insisted on being paid for his buildings and improvements, according to the valuation thereof made pursuant to the covenant in the lease ; and the lessor tendered a *renewal* of the lease for the same term, and for the same rent, but without any covenants as to building, or paying for buildings and improvements : *Held*, that the lessee was bound to accept the renewal of the former lease, so tendered, or give up all claim to be paid for the buildings and improvements.

THE plaintiff being owner of a lot of ground, at the corner of *Rutger* and *Cherry-streets*, in the city of *New-York*, leased it, on the first of *May*, 1799, to the defendant, for 21 years, at the yearly rent of forty-five pounds, (112 dollars and 50 cents,) payable quarterly, with all the taxes, &c. The defendant covenanted to build, within two years of the date of the lease, a good brick dwelling house on the lot ; and further, that " at the expiration of the term aforesaid, such house, or other buildings and improvements, which he, the said *W. H.*, his, &c. shall or may, at any time during the said term, make, build and erect, on the said lot, or any part thereof, shall be valued by three indifferent persons, to be chosen in the most usual

*June 1st, and August 3d.*

way, and that the said *H. Rutgers*, &c. shall and will pay and satisfy the amount of such valuation, to the said *W. H.*, &c. ; and, in case the said *H. R.*, &c. shall, or do not agree to, and abide by, and pay and satisfy unto the said *W. H.*, &c. the amount of such valuation, &c., then he, the said *H. R.*, &c., shall and will *renew the said lease, or redemise the said lot*, &c., unto the said *W. H.*, his, &c. at *such rent* and *upon such terms as may be agreed upon*, by and between the said parties," &c.   The defendant took possession of the lot, and built a house upon it, pursuant to his covenant, and occupied the premises, until the first of *May*, 1820, when the lease expired.   A short time before the end of the term, the plaintiff, prefering to renew the lease, or redemise the lot, rather than to pay the appraised value of the buildings, on the 11th of *January*, 1820, offered in writing, to the defendant, to renew the lease, and desired him to name a reasonable rent, which he refused to do.   On the 14th of *January*, the plaintiff offered to the defendant to renew the lease, at the yearly rent of sixty pounds, (150 dollars,) and the taxes, &c. which the defendant refused, and gave notice that he wished the buildings to be valued, according to the tenor of the lease.   On the 30th of *March*, the plaintiff gave notice to the defendant, that he appointed *A. P. M.* as one of the appraisers, but it must be explicitly understood, that he did not intend thereby to commit himself to pay the valuation, or waive the privilege in the lease of disagreeing to it, or his right of renewing the lease.   The defendant nominated an appraiser on his part, who associated with themselves a third person, and they valued the house and improvements at 4583 dollars.   The plaintiff being dissatisfied with the valuation, and the defendant refusing to name the terms on which he would accept a renewal of the lease, the plaintiff, on the day on which the term expired, tendered to the defendant a new lease, executed by the plaintiff, for the term of 21 years from the first of *May*, 1820, at the

yearly rent of 112 dollars and 50 cents, payable quarterly, with all taxes, &c., but the defendant to accept the lease, or execute the counterpart. The plaintiff, at the time the lease and counterpart were tendered to the defendant, offered to add a clause to the lease, that the plaintiff, at the end of the term, should redemise the premises for a further term of 21 years, at such rent as might be agreed on by the parties; or if they should disagree, at such valuation of the annual rent, as should be made by persons to be chosen by the parties, &c. The defendant refused to accept the lease with or without the additional clause, or to state his objections to it; but brought an action in the Supreme Court against the plaintiff, for a breach of covenant, in not paying the 4583 dollars, the amount of the valuation of the buildings and improvements on the lot. The defendant left the premises the first of *May*, 1820, and they had since remained unoccupied. *Prayer*, for an injunction against the suit at law; and that it be decreed, that the plaintiff is not bound to abide by a valuation, but had a right to dissent from any valuation; and that the defendant was bound to accept of a renewal of the lease, at a reasonable rent, and upon reasonable terms, to be settled by the Court; and that, in the mean time, a *receiver* be appointed to take charge of the house and lot, and to let the same from year to year, and to apply sufficient of the rent towards repairs, and pay the remainder into Court; and for general relief.

The defendant, in his answer, admitted the material facts stated in the bill.

*June 1st.* The cause was brought to a hearing, on the pleadings and proofs.

*T. A. Emmet*, for the plaintiff. He cited 9 *Vesey*, 607. 12 *Vesey*, 107.

Vol. VI. 28

1822.

RUTGERS
v.
HUNTER.

1822.

RUTGERS
v.
HUNTER.

*S. Jones*, contra. He cited 2 *Vernon*, 415. 4 *Bro. C.  C.* 477. 1 *Anstr.* 80. 7 *Vesey*, 231. 3 *Atk.* 389. 3 *Vesey*, 184. 3 *Bro.* 148. 5 *Vesey*, 605. 7 *Vesey*, 35. 8 *Vesey*, 505. 9 *Vesey*, 605. 12 *Vesey*, 107. 13 *Johns. Rep.* 297.

THE CHANCELLOR. By the lease of 1799, the plaintiff had his election either to pay for the buildings and improvements at the valuation, or renew the lease, or redemise the lot, at such rent, and upon such terms, as the parties might agree on.

He elected to renew the lease; and, on the day of the expiration of the lease, he tendered another lease for the lot, for the same term and rent as in the former lease; but the defendant refused to accept that or any other lease, or agree to any terms of another lease, and insisted on being paid the value of his improvements, under the covenant in the first lease.

It is contended, on the part of the defendant, that the covenant to redemise on such terms, and at such rent as the parties might agree on, is void for uncertainty. To *redemise the lot* at such rent, and upon such terms as might be agreed on, is, indeed, quite analogous to a covenant *to let the lot for a yearly rent*, to be fixed by men to be mutually chosen, and which was held, in *Abeel* v. *Radcliff*, (13 *Johns. Rep.* 297.) to be void for uncertainty, as no term was fixed. But here was, also, the alternative to " renew the said lease." That implied the same term and rent, and such a lease was tendered on the day of the termination of the first lease. The covenants in the first lease, relative to the buildings, were no necessary part of it; and it would be absurd to suppose, that an agreement to renew a lease, did necessarily imply a lease, not only of the same term and rent, but, also, with all the covenants in the other, and which are the accidental and not the essential parts of a lease. In the first lease, there was a covenant on the part

of the lessee, to build a good brick dwelling house with-

in two years. This was a covenant that had no ne-
cessary, and could not have any reasonable connexion,
with the renewal of the lease; and the same observation
will apply to the covenant on the part of the lessor, to
pay, at the expiration of the lease, the value of *such house*,
and of other buildings and improvements to be made, built,
and erected on the lot, or to renew the lease. If a cove-
nant to renew the lease, necessarily included a renewal of
all the covenants in it, it would be tantamount to a cove-
nant for perpetual renewal, and so extraordinary a cove-
nant ought not to depend on inference merely. An agree-
ment to make leases with covenant for perpetual renewal,
each lease to contain the same covenant for ever, was a
species of contract which Lord *Thurlow* thought ought not
to be executed. But Lord *Eldon* (16 *Vesey*, 84.) disa-
greed to that doctrine, on the ground, that such contracts
had been too long covered and sanctioned by decisions. I
do not mean to say, that such covenants are not valid; but
I contend, only, that they must be clearly and certainly
made, and are not to be deduced by construction from a
covenant to " renew the lease," without saying more.

I am, accordingly, of opinion, that the defendant has no
right to pursue his action at law on the covenant to pay
the valuation, and that he must waive the benefit of that
valuation, since the plaintiff has elected to renew the lease,
and has actually tendered a renewal of the lease. He must
accept of the lease tendered, or agree with the plaintiff to
another lease upon other terms and rent; and if he will not
do either, he must be content to lose his improvements, for
the plaintiff reserved to himself the right, (and the defend-
ant was a party to that reservation,) to pay the value, or
renew the lease, or redemise the lot on terms to be agreed
on. I am not certain, that if the lease had only provided
for a redemise of the lot upon terms to be agreed upon, or
to pay the valuation, that the defendant could have obsti-

nately refused any terms.  Possibly, it might be considered like the case mentioned by Sir *Samuel Romilly*, (9 *Vesey*, 605.) of an agreement to sell at the valuation of another person ; and if the party refuses to name a value, the Court refers it to a master.  The Court might not be inclined to enforce, specifically, such an agreement, and yet not permit a party to refuse all terms, and avail himself purposely of the covenant to pay the value.  This would *destroy*, altogether, the alternative reserved by the lease, and the party might be considered bound to accept of reasonable terms.  However, I am not required, nor am I ready to give any opinion on such a case as this would be, in the absence of the other alternative, to *renew the said lease*.  Lord *Loughborough*, in *Mosely* v. *Virgin*, (3 *Vesey*, 184.) considered a covenant to repair and a covenant to build, without saying what building, as too loose and undefined to be the subject of a reference to a master, and upon which the jurisdiction of the Court, as to the specific performance of contracts, can apply.  But the question, in such a case, would be, not that the agreement was to be specifically enforced, but whether a party should be permitted to recover his improvements at law, when he, *in fraud of the agreement*, refused to accede to another lease upon any terms, however just and moderate.

The following decree was entered :—

" It is *declared and adjudged*, that the plaintiff, by the provisions of his lease to the defendant, was entitled to elect either to pay for the buildings, and other improvements on the lot, in the pleadings mentioned, according to the valuation thereof, or to renew the lease, or to redemise the lot, at such rent and upon such terms as the parties might agree on.  And *it is further declared and adjudged*, that the defendant refused to accept of a redemise of the lot upon any terms ; and that the plaintiff elected to renew the former lease, and did on the day of the expiration of

the former lease, tender a renewal of it for the same term, and upon the same rent, and the defendant was bound either to accept of the same, or give up his claim for the value of his improvements. And *it is further declared and adjudged*, that the lease so tendered was a renewal of the former lease, within the meaning of the covenant, and that it was not necessary to insert therein the covenants of either party, contained in the former lease, respecting the building a house, and the paying for that and other improvements, inasmuch as such covenants are the accidental and not essential parts of a lease, and had no just or reasonable application to the renewal of the former lease. *It is, thereupon, ordered*, &c., that the defendant, within forty days after service of a copy of this decree on him, or on his solicitor, may signify in writing to the plaintiff, or to his solicitor, his acceptance of the lease so tendered, and the plaintiff shall, thereupon, cause the lease so tendered, or *another of the same import and effect*, duly executed, to be delivered to the defendant, or to his solicitor, for his use. *And it is further ordered*, &c., that in case of such acceptance by the defendant, of such renewed lease, he duly account before a master to the plaintiff for the arrears of rent of the said lot, up to the first day of *August*, instant; and, on such accounting, that he be credited for whatever rent the plaintiff may have received from any other person, for the use and occupation of the said lot, since the defendant ceased to occupy the same, after deducting all reasonable expenditures, made in the intermediate time, for reparations, assessments, or taxes thereon; and that, on the report of the master being made and confirmed, that the defendant pay such balance of rent to the plaintiff, together with his costs of this suit, to be taxed, and that the plaintiff have execution therefor, according to the course and practice of the Court. *And it is further ordered*, &c., that if the defendant shall not, within the time aforesaid, signify, as aforesaid, his accept-

ance of such renewed lease, that, thereupon, the plaintiff shall be at liberty to use, lease, sell, or otherwise dispose of the lot, free and discharged of the covenants by him in the former lease to the defendant. *And it is further ordered,* &c., that the defendant be, and he is hereby perpetually enjoined from prosecuting his said suit at law, in the bill mentioned, against the plaintiff, or any other suit at law, upon the covenant in the said lease, to pay the amount of the valuation of the said improvements, and that the injunction, heretofore issued, be, and is hereby declared to be perpetual."