Van Vorst, J.
Express covenants, it is said, should be taken strictly (Shubrick v. Salmond, 3 Burr. 1639). At furthest, when construction is called for, a covenant should be fairly and reasonably considered, and good faith in its performance should be upheld according to the intention of the parties. This intention is to be gathered, when extrinsic facts can give no clue, from the written words of the parties, which are to be fairly interpreted. A construction, however, should not be adopted, unless the words cannot be otherwise rendered, which would lead' to illegality or produce inequitable results. '
The agreement between the landlord and tenant, of the date of March 19, 1878, by which the premises in question were let for one year from the first day of May, 1878, contains the following stipulation on the part of the lessors : “ It is understood and agreed that if we again lease the premises 215 Pearl street, and desire to relet the premises hereby leased, GK W. Barker (the under-lessee) is to have the refusal of the said floor for such period as he may lease and desire to relet, at the above named rent, so long as the rent established for this year to GK W. Barker (the lessor) is unchanged ; and if this rent is reduced he is to have a corresponding reduction, or if the rent is advanced, he is to pay a corresponding advance.”
In March, 1879, by a new agreement in writing between the parties, the premises, with a slight modification as to the space let, were again rented to the plaintiff, by the defendants, for additional term of one year, but at a reduced rent.
The new lease did not contain any stipulation as to any further renewal.
It is claimed by the plaintiff that notwithstanding *413 the silence of the new agreement of March, 1879, on the subject of a right to a further renewal, he is entitled thereto by virtue of the stipulation contained in the previous agreement of March, 1878, and that, by taking the new agreement, he did not intend to give up any rights he had under the previous stipulation, and under this supposed view of his rights, before May, 1880, when his last term would expire, he demanded from the defendants a further lease for a year from that day, which was refused, and this action for a specific performance was brought.
The question presented is, Did the lease of March, 1879, to take effect on the first day of May following, satisfy the stipulation contained in the agreement of March, 1878 \ The facts justify the conclusion that the defendants’ own term expired on May, 1879, and that they “ again” leased the premises from their landlord for another year, and that it was in pursuance of such subsequent ■ letting to themselves that they gave the new lease to the plaintiff, which would expire with their own term, on May 1, 1880.
The defendants, by their agreement of March 19, 1878, covenanted that if they “again” leased the premises the plaintiff should have the refusal for such period as they might lease the same.
I am of opinion that the fair demands of the stipulation were satisfied upon the execution to the plaintiff of the lease of March, 1879. That such was the intention of the parties is shown by the fact the new lease was executed, delivered and received without objection although it contained no provision for any further lease.
The words “so long,” used in a subsequent part of the stipulation, do not, in my opinion, enlarge the term first used, “ If we again,” which I conclude to be fully satisfied by a single letting to the plaintiff for the duration of the term to which the defendants succeeded when they “again” took a lease from their *414 own landlord) and that the words “so long” apply only to the term first created after the landlord’s engagement with the plaintiff, and to the amount of rent to be paid by the plaintiff, if he should then desire a new lease.
The construction claimed for by the plaintiff would place the defendants under a covenant to relet to the plaintiff during the entire period they might hold the premises, under leases made to them again and again, for any number of years, unless they should conclude actually to use them for their own business. The courts lean against such a construction of . an agreement betAveen landlord and tenant as will lead to a perpetuity, and will not infer an agreement for a second renewal from a general provision for the renewal of the lease with similar provisions (Carr v. Ellison, 20 Wend. 179, in which case it was held that a covenant to renew a lease under the same covenants contained in the ■origihal lease is satisfied by a renewal “omitting the covenant to renew ; ” Rutgers v. Hunter, 6 Johns. Ch. 215; Piggot v. Mason, 1 Paige, 412 ; Willis v. Astor, 4 Edw. Ch. 595).
Whether a prior lease is superseded by or merged in a subsequent one is doubtless often a question of intention, to be sought for in the facts and circumstances of the case. Here a new lease was accepted for a less rent than that reserved in a previous one, and the premises covered thereby were not as large as those embraced within the previous lease. This result was reached by an arrangement between the parties before the second letting. This must be accepted in itself as a reason for the conclusion that, in law, the second satisfied and took the place of the first one.
In'this view it is not necessary to pass upon the question as to whether the plaintiff’s conduct towards the defendants and their business, and which his occupation of the premises enabled him to exercise to the defend *415 ants’ injury, would deprive Mm of the right to maintain an action in equity for the specific performance of the contract if the covenant was still outstanding, and should not turn him over to an action at law for damages.
For the reasons first above mentioned, the plaintiff’s complaint is dismissed upon the merits, with costs.