JOHN N. BURNS, as Administrator de Bonis Non of REBECCA C. WAYNE, Deceased, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

**Real property — lease — continued renewals of lease for a term of years — when covenant for future renewals, embodied in original lease and in each renewal thereof, will be enforced.**

1. Although covenants by a landlord for continual renewals of a lease for a term of years are not favored by the courts because they tend to create a perpetuity, yet, when they are explicit and show that such is the intention of the parties, covenants for future renewals will be enforced.

2. Where a lease provided "that at the expiration of the term it will be renewed with a like covenant for future renewals of the lease, as is contained in this indenture," the language is clear and should be enforced. So also where four renewals were had covering a period of nearly one hundred years, the intention of the parties is shown and such renewals are a practical construction of the original lease and should have great weight in ascertaining its meaning and effect. (*Syms* v. *Mayor, etc., of New York,* 105 N. Y. 153, criticised and distinguished; *Storms* v. *Manhattan Ry. Co.,* 178 N. Y. 493, followed.)

*Burns* v. *City of New York,* 158 App. Div. 729, reversed.

(Argued December 3, 1914; decided January 12, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 24, 1913, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, as far as material, are stated in the opinion.

*James A. Donnelly* for appellant. The power and authority to make the lease of 1811 was vested in the mayor, aldermen and commonalty of the city of New York by charter. (Dongan Charter, § 12; Montgomerie Charter, § 36.) The covenant for renewal contained in the original lease, and in each renewal lease, provides clearly and unequivocally for the continual lease of the premises, and was so construed by the parties. (*Moore* v. *Beiseker,* 147 Fed. Rep. 367.) Covenants for continual renewal, when clearly expressed, are valid and enforceable. (*Storms* v. *Mahattan Ry. Co.,* 178 N. Y. 493; *Hare* v. *Burgess,* 4 K. & J. 41; *Hodges* v. *Blagrave,* 18 Beav. 404; *Martin.* v. *Babcock,* 186 N. Y. 451; *Hoff* v. *Royal Metal Furniture Co.,* 117 App. Div. 884; 189 N. Y. 555; *Winslow* v. *B. & O. R. R. Co.,* 188 U. S. 646; *Copper Mining Co.* v. *Beach,* 13 Beav. 477.) The ordinance adopted by the common council in 1844 applies to leases thereafter given. Neither

it nor subsequent legislative amendments of the city charter can be construed to apply to outstanding leases which the city by its covenants is bound to renew. (*Goldberg* v. *Surety Co.*, 162 App. Div. 385.) The right to renewal, created by the terms of valid contracts made in 1811 and 1827, vested prior to the adoption of the ordinance in 1844. It necessarily follows that the leases granted in 1848, 1869 and 1890 were made obligatory by virtue of the covenant contained in the lease of 1811 and 1827, and were validly executed pursuant to the power and authority vested in the mayor, aldermen and commonalty of the city of New York. (*Osborn* v. *Nicholson*, 13 Wall. 654; *Hoverman* v. *Kansas City H. R. Co.*, 79 Mo. 632; *City of New Orleans* v. *Southern T. & T. Co.*, 40 La. Ann. 41; *Gunn* v. *Barry*, 15 Wall. 610; *Edwards* v. *Kearsey*, 96 U. S. 595; *Martin* v. *Babcock & Wilcox Co.*, 186 N. Y. 451; *Hodges* v. *Blagrave*, 18 Beav. 404; *Hare* v. *Burges*, 4 K. & J. 417.) The ordinance of 1844 and the statutes relative to the leasing of New York city property thereafter enacted, are not to be construed so as to divest the right of renewal created by the leases of 1811 and 1827. (*Matter of Pell*, 171 N. Y. 50; *Amsbry* v. *Hinds*, 48 N. Y. 151; *McCahill* v. *Hamilton*, 20 Hun, 291; *Matter of Protestant Episcopal Church*, 40 How. Pr 139.) When the city granted the lease to Dixey and covenanted to renew, it assumed contractual obligations which neither it nor the state had the power to impair, and vested rights which neither it nor the state had the right to destroy. (*Danolds* v. *State of New York*, 89 N. Y. 36; *People* v. *Stephens*, 71 N. Y. 527; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Western Savings Fund Society* v. *Philadelphia*, 31 Penn. St. 175.)

*Frank L. Polk*, Corporation Counsel (*Charles J. Nehrbas* and *Terence Farley* of counsel), for respondent. The city of New York fully performed its duty under

the lease of 1811 by executing the renewals dated respectively May 1, 1827, and May 1, 1848. (*Syms* v. *Mayor, etc.*, 105 N. Y. 153; *Winslow* v. *B. & O. R. R. Co.*, 188 U. S. 654.) The renewal leases executed subsequently to May 1, 1869, were made without authority of law and are void; the city is, therefore, under no obligation to execute any further renewal. (L. 1845, ch. 225; L. 1853, ch. 217, § 7; L. 1857, ch. 446, § 41; L. 1869, ch. 876, § 8; L. 1882, ch. 410; L. 1901, ch. 466, § 205; *McDonald* v. *Mayor, etc., of N. Y.*, 68 N. Y. 27.)

CHASE, J. The mayor, aldermen and commonalty of the city of New York, in 1811, leased to John Dixey a small piece of real property in the city of New York now known as No. 103 Park Row. The lease was for the term of twenty-one years, beginning May 1, 1806. It contained a covenant by the lessor that "They, the said Mayor, Aldermen and Commonalty of the City of New York, their successors and assigns shall and will, at the expiration of the term hereby demised, again demise and to farm let the above premises in pursuance of this present lease unto the said John Dixey, his executors, administrators or assigns for and during the term of twenty-one years thereafter, *with a like covenant for future renewals of the lease as is contained in this present indenture,* and upon such rents and other terms and conditions as shall be agreed upon between the parties, or as shall be determined by two sworn appraisers, one of whom to be chosen by each of the said parties; unless the said premises or some part thereof shall at the expiration of the said term hereby demised be required for public purposes; in which case the said term shall not be renewed, but the said Mayor, Aldermen and Commonalty of the City of New York, their successors and assigns shall and will pay to the said John Dixey, his executors, administrators or assigns, the value of such buildings as shall be erected in pursuance of this lease. * * *"

On May 1, 1827, May 1, 1848, May 1, 1869, and on May 1, 1890, and on each of said dates, said lease was renewed for a further term of twenty-one years to the successor in interest of said Dixey. Each of said renewals contained a provision similar to the provision quoted from the first lease providing for future renewals. Prior to May 1, 1911, at the expiration of the lease dated May 1, 1890, the successor in interest of said Dixey duly applied for a renewal of said lease for a further period of twenty-one years, which application was refused. The plaintiff's testatrix and her predecessors in title fully performed all the conditions and covenants required of the lessee by the terms of said leases. The premises are not required for public purposes. The respondent claims that if the original lease did not provide for perpetual renewals the leases executed on and subsequent to May 1, 1869, were made without authority of law and are void, because of the ordinances passed by the common council of the city of New York in 1844 and subsequent acts of the legislature. (Ordinances of the City of New York, sections 9 and 10, title 4, as ratified and confirmed by chapter 225, Laws of 1845; chapter 217, Laws of 1853, section 7; chapter 446, Laws of 1857, section 41; chapter 876, Laws of 1869, section 8; chapter 410, Laws of 1882, section 170; present Charter of the City of New York, section 205.)

But one question of law is presented on this appeal and that is involved in the construction of that part of the lease quoted relating to the renewals thereof. Was it the intention of the parties to the lease to provide for perpetual renewals?

Covenants by a landlord for continual renewals are not favored for they tend to create a perpetuity. When they are explicit the more established weight of authority is in favor of their validity. (Kent's Comm. vol. 4, 109.) The rule stated by Kent was the law in England and has been frequently stated by writers and in opinions by the courts both in England and in this country. (Platt on

Leases, 709; Taylor's Landlord and Tenant, section 335; 3 Washburn's Real Property, 469; McAdam on Landlord and Tenant, section 123; Jones on Landlord and Tenant, section 343; *Tritton* v. *Foote,* 2 Brown's Ch. R. 636, 639 and note; *Hare* v. *Burges,* 4 K. & J. 41; *Rutgers* v. *Hunter,* 6 Johns. Ch. 215; *Carr* v. *Ellison,* 20 Wend. 178; *Hoff* v. *Royal Metal Furniture Co.,* 117 App. Div. 884; affirmed, 189 N. Y. 555; *Drake* v. *Board of Education,* 208 Mo. 540.)

Reading the provisions of the leases in question in the light of the settled law upon the subject of the construction of covenants for renewal, it is difficult to avoid the conclusion that the parties to the original lease in preparing the same had the established rule of law in mind and intended to bind the city to grant future renewals in perpetuity. Such intention is not left to conjecture or to be implied. It is clearly and specifically provided by the lease that it shall run for a term of twenty-one years and that at the expiration of the term it will be renewed *" with a like covenant for future renewals of the lease as is contained in this present indenture."* As the language in regard to future renewals is clear, it should be enforced.

The respondent relies upon the case of *Syms* v. *Mayor, etc., of N. Y.* (105 N. Y. 153). The plaintiff in the *Syms* case brought the action to reform two leases. The city of New York had executed a lease for the term of thirty years which ended on the first day of May, 1840. In it the city agreed that at the expiration of the term it would give a new lease " for and during the term of twenty-one years thereafter with a like covenant for future renewals of the lease as is contained in this present indenture." A new lease was given at the end of the first term for a term of twenty-one years, and it was therein covenanted that at the end of such renewed term another lease would be given " in pursuance of this present lease  *  *  *  for and during the term of twenty-one years thereafter upon

such rents as shall be agreed upon." At the end of the second lease a third lease was given to an assignee of the first lessee, and in such third lease there was no covenant for a renewal, but the lessee expressly covenanted that at the end of the term he would peaceably and quietly leave, surrender and yield up to the city or its successors or assigns all the demised premises. Near the end of the term of the last lease the city sold the property to a stranger to the lease. Thereafter the successor of the lessee brought the action to reform the leases given in renewal of the original lease so as to insert in each a covenant for a further renewal of twenty-one years from the date of the expiration of such renewals. The court in the opinion say (page 158): "This action was brought mainly for the purpose of reforming the last two leases. But there was no proof of any mistake or fraud in their execution, or in the terms inserted in them, and, therefore, even if the statute of limitations did not furnish a bar to the action to reform the leases, there was no basis or ground for their reformation. The plaintiff's action, therefore, utterly failed and a verdict was properly directed for the defendants." It was not necessary for the court to discuss the construction of the original lease, as the renewals had been given and accepted without fraud or mistake, and by the terms of the last renewal neither the lessee nor any person claiming under him could assert any right to the premises after the termination of such lease. The court, however, did in the course of the opinion use language as follows: "The lease executed in 1810 should not be so construed as to create a perpetuity. (*Rutgers* v. *Hunter*, 6 Johns. Ch. 215; *Carr* v. *Ellison*, 20 Wend. 178; *Piggot* v. *Mason*, 1 Paige, 412; *Banker* v. *Braker*, 9 Abb. N. C. 411.) Its language is satisfied by holding that it gave the lessee the right to two renewals and those renewals were subsequently given and it must be assumed that the parties so understood the first lease. The two renewals signed by both parties gave that lease

a practical construction which should have great weight with any court called upon to ascertain its meaning and effect."

Notwithstanding the statement of the court regarding the covenant for renewal in the *Syms* case, we think that if the intention of the parties in that lease had not been shown by their acts amounting to a practical construction, and if the renewals had not been accepted and fully agreed to by the parties in the form stated, the language of the original lease would not have been satisfied by granting two renewals thereof.

The intention of the parties in this case is shown by the four renewals covering a period of nearly one hundred years to have been in accordance with the construction of the appellant. As said by the court in the *Syms* case, these renewals are a practical construction of the original lease which should have great weight with any court called upon to ascertain the meaning and effect of the lease itself.

In *Storms* v. *Manhattan Ry. Co.* (178 N. Y. 493) the court construed a lease having a covenant in the exact words of the covenant in the lease now under consideration. The court there referred to the lease as one entitling the lessee to perpetual renewals and say: "The covenant for renewal must be considered as perpetual, absolutely binding the city until some portion of the land upon which the plaintiff's building stands shall be actually required for public purposes by the City of New York." The decision in the *Storms* case was subsequent to the decision in the *Syms* case, and it supports the claim of the appellant that the court is not bound by language used in the opinion in the *Syms* case which was not only not necessary to the decision of the case but was used in connection with its reference to the practical construction placed upon the lease by the parties to it. It is conceded that if it was not the intention of the parties to the lease under consideration to provide for per-

petual renewals the judgment appealed from is right and should be affirmed.

The intention to grant renewals in perpetuity is not shown by a general covenant to renew upon the same covenants, conditions and agreements as contained in the original lease. There must be some language in the covenant which shows an intention to include in the renewal leases a particular covenant in regard to future renewals. (*Muhlenbrinck* v. *Pooler,* 40 Hun, 526; *Carr* v. *Ellison,* 20 Wend. 178; *Winslow* v. *Balt. & O. R. R. Co.,* 188 U. S. 646.) The lease under consideration expressly provides that the renewal leases shall contain a covenant *in regard to renewals* the same as in the original lease. This agreement the parties are entitled to have carried out.

In *Hare* v. *Burges* (*supra*) a clause in a lease providing for a renewal lease at the same rents and subject to the same covenants *including this present covenant* was held to give to the lessee the right to perpetual renewals.

In *Hodges* v. *Blagrave* (18 Beav. 404) the lease contained a covenant on the part of the lessors to renew for twenty-one years "and that in every future lease should also be inserted the *like covenant for renewals* at the expiration of the first ten years of every such lease." The court held that the lessee was entitled "to a perpetual renewal from time to time forever upon the terms stated in the original lease." In *Hoff* v. *Royal Metal Furniture Company* (*supra*) the lease contained a covenant that "Said party of the second part, its successors or assigns, to have the privilege of renewing this lease from year to year upon notice to that effect in writing, given on or before the day of the date of the expiration of *each and every year* by written notice addressed to the party of the first part at her last known address." The court held that the covenant entitled the lessee to perpetual yearly renewals.

It is not denied that the mayor, aldermen and common-

alty of the city of New York had the power to make the lease in 1811, and therein provide for perpetual renewals. Neither is it claimed that the ordinances and the acts of the legislature prevented the renewal of said lease from time to time if it was so agreed in the original lease. The ordinances and acts of the legislature were not intended to affect outstanding valid contracts.

The judgment should be reversed and judgment directed in favor of the plaintiff in accordance with this opinion, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDE-BACK, MILLER and CARDOZO, JJ., concur.

Judgment reversed, etc.