[945 NE2d 484, 920 NYS2d 291]

Bleecker Street Tenants Corp., Respondent, v Bleeker Jones LLC et al., Appellants, et al., Defendants.

Argued January 6, 2011; decided February 24, 2011

**POINTS OF COUNSEL**

*Kramer Levin Naftalis & Frankel LLP*, New York City (*Jeffrey L. Braun* and *Julie M. Weiswasser* of counsel), for appellants. I. The rule against perpetuities does not apply to options to renew a lease. (*Symphony Space v Pergola Props.*, 88 NY2d 466; *Deer Cross Shopping v Stop & Shop Supermarket Co.*, 2 Misc 3d 401; *Warren St. Assoc. v City Hall Tower Corp.*, 202 AD2d 200; *Omath Holding Co. v City of New York*, 149 AD2d 179; *Burns v City of New York*, 213 NY 516; *Hoff v Royal Metal Furniture Co.*, 117 App Div 884, 189 NY 555; *DeSantis v Kessler*, 83 AD2d 766; *Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156; *Morrison v Piper*, 77 NY2d 165.) II. Even if the rule against perpetuities applies to options to renew a lease, it does not apply to the options in this case. (*Symphony Space v Pergola Props.*, 88 NY2d 466; *Kennedy v City of New York*, 196 NY 19; *120 Bay St. Realty Corp. v City of New York*, 44 NY2d 907; *430 Broome St. Realty Corp. v Bonnouvrier*, 17 Misc 3d 1128[A], 2007 NY Slip Op 52182[U]; *Morrison v Piper*, 77 NY2d 165; *Wildenstein & Co. v Wallis*, 79 NY2d 641; *Hechter v New York Life Ins. Co.*, 46 NY2d 34.)

*Genoa & Associates, P.C.*, Old Brookville (*Marilyn K. Genoa* of counsel), for respondent. I. The Appellate Division correctly held that the renewal option contained in the lease violates EPTL 9-1.1 (b). (*Symphony Space v Pergola Props.*, 88 NY2d 466; *Recovery Consultants v Shih-Hsieh*, 141 AD2d 272; *Buffalo*

*Seminary v McCarthy*, 86 AD2d 435; *Warren St. Assoc. v City Hall Tower Corp.*, 202 AD2d 200; *Omath Holding Co. v City of New York*, 149 AD2d 179; *Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156; *Wildenstein & Co. v Wallis*, 79 NY2d 641; *Bright Homes v Wright*, 8 NY2d 157; *Matter of Martin v School Bd. of Union Free Dist. No. 28, Long Beach*, 301 NY 233; *Burns v City of New York*, 213 NY 516.) II. The Appellate Division correctly held that the options, which could be exercised after the lease expired, were neither appendant nor appurtenant to the lease. (*Symphony Space v Pergola Props.*, 214 AD2d 66; *Warren St. Assoc. v City Hall Tower Corp.*, 202 AD2d 200; *Double C Realty Corp. v Craps, LLC*, 58 AD3d 480; *Deer Cross Shopping v Stop & Shop Supermarket Co.*, 2 Misc 3d 401; *Inwood Park Apts., Inc. v Coinmach Indus. Co.*, 6 Misc 3d 246; *Kennedy v City of New York*, 196 NY 19; *120 Bay St. Realty Corp. v City of New York*, 44 NY2d 907; *430 Broome St. Realty Corp. v Bonnouvrier*, 17 Misc 3d 1128[A], 2007 NY Slip Op 52182[U]; *Morrison v Piper*, 77 NY2d 165; *Matter of Kellogg*, 35 AD2d 145, 28 NY2d 481.)

### OPINION OF THE COURT

JONES, J.

The appeal before this Court presents the novel question whether options to renew a commercial lease are subject to EPTL 9-1.1 (b), New York's rule against perpetuities. We hold that the rule against perpetuities does not apply to options to renew leases.

Plaintiff Bleecker Street Tenants Corp. is owner of a six-story walkup on Bleecker Street, which was converted to cooperative ownership in September 1983. Plaintiff leased the building's first-floor commercial space to defendant Bleecker Jones Leasing Company, defendant Bleeker Jones LLC's predecessor in interest. The lease agreement was contemporaneous with the co-op conversion.

The lease, in relevant parts, provided for an initial lease term of 14 years, with nine consecutive options to renew for a 10-year-period. Each renewal option term was to "commence on the first day of the calendar month immediately following the expiration of the immediate preceding term of this lease." The lessee could exercise the renewal options together or successively and by giving written notice to the lessor at least six "months prior to the expiration date of each immediately preceding term." If the lessee did not timely exercise a renewal

option and the lessor did not provide notice of the existence of an option within seven months prior to the date of each expiring term, then each renewal option remained in effect until the lessor notified the lessee in writing of its right to exercise each option. The lessee then had 60 days to exercise such renewal option. Lastly, "[i]f the term shall have expired, [l]essee shall remain in possession as a month-to-month tenant until" lessor complied with the notice requirements. The parties agree that, under these provisions, a renewal option could be exercised even after the original lease term had expired, during the month-to-month tenancies resulting from the absence of written notice.

In August 1997, the initial 14-year lease term expired. Defendant Bleeker Jones did not exercise any lease option thereafter. It remained in possession as a month-to-month tenant until plaintiff commenced this action in December 2007, seeking to void the lease renewal options under EPTL 9-1.1 (b) and the common-law rule against unreasonable restraints on alienation. Defendants moved and plaintiff cross-moved for summary judgment.

Supreme Court granted defendants' motion for summary judgment dismissing the complaint while denying that of plaintiff (2008 NY Slip Op 32263[U]). The court concluded that the renewal options were appurtenant to the lease, exercisable during the lease term and, therefore, valid. The Appellate Division reversed (65 AD3d 240 [2009]), declaring the renewal options clause void under EPTL 9-1.1 (b). The court determined that the lease term had expired prior to any renewal option having been exercised and, thus, concluded that the option could not be appurtenant to the lease. We now reverse.

"No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved" (EPTL 9-1.1 [b]). This rule—a "prohibition against remote vesting"—codified the American common-law rule (*Symphony Space v Pergola Props.*, 88 NY2d 466, 471, 475 [1996]).[1] Traditionally, the rule sought to limit an owner's right to control title of property indefinitely, commonly known as a landowner's dead-hand control (*see* 88 NY2d at 475; *Metropolitan Transp.*

1. The Legislature "intended to make clear that the American common law rule against perpetuities has been and now is in force in New York" (Mem of Temporary Commission on the Law of Estates, 1965 NY Legis Ann, at 206).

*Auth. v Bruken Realty Corp.*, 67 NY2d 156, 160 [1986]). Both in their early and modern forms, rules restricting future dispositions of property were founded on the "principle that it is socially undesirable for property to be inalienable for an unreasonable period of time" (*Symphony Space*, 88 NY2d at 475). The underlying objective of the rule remains: to protect the alienability of property (*see* 1965 NY Legis Ann, at 206-207; *see also* Berg, *Long-Term Options and the Rule Against Perpetuities*, 37 Cal L Rev 1, 2 [1949]).

"Under the common law, options to purchase land are subject to the rule against remote vesting" (*Symphony Space*, 88 NY2d at 476; *see also* Leach, *Perpetuities in a Nutshell*, 51 Harv L Rev, 638, 660 [1938]). Though scholars proposed that commercial transactions be exempted from the rule against perpetuities, in *Symphony Space*, the Court held that EPTL 9-1.1 (b) applies to all options to purchase (88 NY2d at 477). An option to purchase land "grants to the holder the power to compel the owner of property to sell it whether the owner is willing to part with ownership or not" (*Bruken*, 67 NY2d at 163). If the option to purchase does not comply with the rule against perpetuities, that interest could be exercised, or vest, at a time remote to the acquisition of such right. As the *Bruken* Court noted, the option to purchase in *Buffalo Seminary v McCarthy* (86 AD2d 435 [4th Dept 1982], *affd* 58 NY2d 867 [1983]) "granted the holder an unlimited right to buy the owner's land at any time" (67 NY2d at 163). It is that uncertainty of title which renders the property "inalienable for an unreasonable period of time" (*Symphony Space*, 88 NY2d at 475). The *Symphony Space* Court reasoned: "Inasmuch as the common-law prohibition against remote vesting applies to both commercial and noncommercial options, it likewise follows that the Legislature intended EPTL 9-1.1 (b) to apply to commercial purchase options as well" (*id.* at 478).

The *Symphony Space* Court also recognized that certain options to purchase land, options appurtenant or appendant to a lease, are not invalid under the rule against perpetuities if the option "originates in one of the lease provisions, is not exercisable after lease expiration, and is incapable of separation from the lease" (*id.* at 480; *see also Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156, 165 [1986]; 3 Simes and Smith, The Law of Future Interests § 1244 [3d ed]). The Court reasoned that such options "encourage the possessory holder to

invest in maintaining and developing the property by guaranteeing the option holder the ultimate benefit of any such investment. Options appurtenant thus further the policy objectives underlying the rule against remote vesting and are not contemplated by EPTL 9-1.1 (b)" (*Symphony Space*, 88 NY2d at 480).

We now turn to whether EPTL 9-1.1 (b) applies to options to renew leases.

Under the common law, "it [was] well settled that perpetual options to *renew* leases have always been held valid" (Leach, *Perpetuities in a Nutshell*, 51 Harv L Rev at 662; *accord* Abbot, *Leases and the Rule Against Perpetuities*, 27 Yale LJ 878, 883 [1918] ["There seems to be no question . . . that such an option is good"]; *Burns v City of New York*, 213 NY 516, 520 [1915] [expressly-stated continual lease renewal covenants are valid; it "was the law in England and has been frequently stated by writers and in opinions by the courts both in England and in this country"]; *Hoff v Royal Metal Furniture Co.*, 117 App Div 884, 885 [2d Dept 1907] [concluded that covenants for perpetual renewals "are lawful and in general use"]; *see also Perpetual lease or covenant to renew lease perpetually as violation of rule against perpetuities or the suspension of the power of alienation*, 3 ALR 498 [1919]; Berg, 37 Cal L Rev at 22).[2] Thus, because the rule against perpetuities has not applied to options to renew leases under the American common law and EPTL 9-1.1 (b) codifies the American common law, it follows that options to renew leases also fall outside of the scope of EPTL 9-1.1 (b).

Moreover, an option to renew, like a purchase option appurtenant to a lease, furthers the policy goals of the rule against remote vesting. At the same time, lease renewal options or covenants for perpetual lease renewals are wholly distinguishable

---

**2.** Although scholars have questioned whether the validity of such renewal options is excepted or exempted from the rule against perpetuities, they have agreed that those interests are valid, without reservations or limitations (*see* Abbot, 27 Yale LJ at 884; *see also* Berg, 37 Cal L Rev at 22). The option to renew "has been consistently sustained for over 200 years in England," in most cases with "no discussion of the rule . . . Moreover several of the American cases do expressly consider the validity of such covenants under the rule and uphold them none the less. But whether the rule be actually discussed or not, the mere weight of decision seems sufficient to establish the result" (Abbot, 27 Yale LJ at 883-884). Additionally, the concurring and dissenting opinions dispute our reading of the authorities; but neither cites any authority of any kind from any jurisdiction that either says or holds that lease renewal options are subject to the rule against perpetuities.

from purchase options in two respects: an option to renew a lease (1) is exercisable pursuant to the lease agreement and, thus, inherently appurtenant to the lease and (2) lacks the power to divest title of that property to the option holder. It also has been noted that these "covenants" are often part of commercial leases, rendering the lease more attractive and readily alienable than less so (3 Simes and Smith, The Law of Future Interests § 1243 [3d ed]; Berg, 37 Cal L Rev at 23). Thus, lease renewal options appropriately remain valid.

Here, the parties expressly agreed upon nine consecutive renewal options to the 14-year lease term, exercisable according to particular notice requirements. They are not inconsistent with the purpose of the rule against perpetuities because they continue the tenant's possession of the property without interruption, thus encouraging the efficient use of the property. The dissent argues that excluding renewal options from the rule's coverage will undermine the purposes of the rule, suggesting the possibility of a former tenant "retaking possession of the . . . property" after its lease has expired (dissenting op at 287). But our holding does not leave open this possibility, for an option exercisable by a former tenant no longer in possession is not a renewal option: it is an option to enter into a new lease. In the present case, it is clear from the lease that, so long as the renewal options existed, the tenant would remain a tenant, lawfully in possession of the property, at least on a month-to-month basis. There is no sound reason of policy to invalidate such a tenant's option to renew.

Accordingly, the order of the Appellate Division should be reversed, with costs, the motion of defendants Bleeker Jones LLC and Bleecker Jones Leasing Company for summary judgment granted and judgment granted declaring in accordance with the opinion.

READ, J. (concurring). The majority holds that "the rule against perpetuities does not apply to options to renew leases" (majority op at 274) in New York because "the rule against perpetuities [did] not appl[y] to options to renew leases under the American common law" (id. at 277). But the authorities cited by the majority do not demonstrate that options to renew leases enjoyed a blanket exemption from or were outside the purview of the rule against perpetuities under American common law. Instead, these authorities show that an option to renew did not run afoul of the historic prohibition against remote vesting,

subsequently codified in New York as EPTL 9-1.1 (b), if "appurtenant" or "appendant" to the lease, and, in particular, if continuous (a so-called "perpetual" option or covenant to renew). Because the option to renew at issue in this case was appurtenant to the lease (see Symphony Space v Pergola Props., 88 NY2d 466, 478 [1996]), I agree with the result reached by my colleagues in the majority, but I cannot subscribe to their reasoning.

## I.

The majority correctly states that the common law enforced "*perpetual* options to *renew* leases" (majority op at 277 [first emphasis added; second emphasis in original]). As Professor William Berg, Jr. explains,

> "[i]n the early years of the eighteenth century, when the modern Rule against Perpetuities was in its formative stage, the highest court of England rendered a decision in which it held that a lessor's covenant to renew a twenty-one year lease perpetually was not in violation of the Rule. Thereafter, an almost unbroken line of cases in England and America upheld *covenants of that type*" (Berg, *Long-Term Options and the Rule Against Perpetuities*, 37 Cal L Rev 1, 22 [1949] [emphasis added]).

In his view, a perpetual renewal covenant was not properly classified as an exception to the rule, as many experts claimed; rather it was simply "outside [its] province" (*id.* at 23) because

> "under the view that the Rule is designed to destroy indirect restraints upon the practical alienability of property which are brought about by remote non-vested future interests, *covenants to renew leases, without time limit, do not suspend the practical power to alienate land.* So long as the value of the land does not drop to the point where the rental becomes prohibitive, the lessee always has in himself the legal as well as the practical power to convey that which is substantially a fee simple. On the other hand, when the lease becomes unprofitable, the lessee will give up his right to renew and the lessor will resume complete ownership" (*id.* [emphasis added]; *see also* Gray, The Rule against Perpetuities § 230 [4th ed 1942] [regarding perpetual leases

as valid because they give lessees estates akin to fees simple defeasible upon conditions subsequent]).

Professor Berg also noted that, for the lessor, a "desire to retain ownership of the land as a good business investment might influence" the granting of a lease with a perpetual covenant; further "[o]n some occasions [the lessor] might be motivated by a sentimental unwillingness to part with the land, but in any event it is difficult to twist the transaction so as to impute . . . the desire to create an inalienable interest" (37 Cal L Rev at 24).

The seminal eighteenth century English case referred to by Professor Berg—*Bridges v Hitchcock* (5 Bro PC 6, 2 ER 498 [House of Lords 1715])—illustrates what a perpetual option to renew a lease looks like and how such a covenant comports with the policy underlying the rule against perpetuities. In 1693, Stapleton leased a property owned by Bridges known as "Ember Mill," which had fallen "greatly out of repair" (5 Bro PC at 6, 2 ER at 498). The lease was for 21 years, but provided

> " 'that if the lessee, his executors, administrators, or assigns, or any of them, should, at any time thenafter, before the expiration of the term thereby demised, be minded to renew and take a further lease of the said premises; that then, upon application made, at any time before the last six months of the said term, the appellant, his heirs or assigns, should grant such further lease as should by the lessee, his executors, administrators, or assigns, be desired, without any fine to be demanded therefore, and *under the same rents and covenants only* as in this lease' " (5 Bro PC at 7, 2 ER at 498).

Upon taking possession, Stapleton and his partners set to work rebuilding and improving the property: they tore down the old corn millhouse and erected a brick millhouse in its stead, as well as a millhouse and mills for manufacturing brass and iron and several other buildings. Hitchcock, who by 1714 had acquired the whole interest in the premises from Stapleton and his partners, "reasonably expected to obtain a new lease" (5 Bro PC at 8, 2 ER at 499), but Bridges resisted on various grounds. Defending the investments made in the property, Hitchcock argued that the covenant for perpetual renewal should be enforced by the courts because it was "the only foundation and encouragement which the parties had[ ] for expending so much money upon the premises as they had done" (5 Bro PC at 9, 2 ER at 499). The House of Lords agreed.

Next, the majority also relies on law review articles by Edwin H. Abbot, Jr. and Professor W. Barton Leach to support the proposition that the rule against perpetuities never applied to leases to renew at common law. Abbot hypothesizes "a lease for over 21 years [which] contains a covenant for renewal at the option of the lessee[ ] [o]r . . . such a lease contains a covenant for a perpetual series of such renewals" (Abbot, *Leases and the Rule Against Perpetuities*, 27 Yale LJ 878, 883 [1918]). Contrary to Professor Berg, he then states that "there seems no escape from the conclusion that such an option if sustained . . . form[s] *an exception* to" the rule against perpetuities; however, he declares, "[t]here seems to be no question . . . that such an option is good. It has been consistently sustained over 200 years in England. The great weight of authority in this country is to the same effect" (*id.* at 883-884 [emphasis added]). For English common-law authority, Abbot cites *Bridges*, which, as previously discussed, involved a perpetual covenant to renew.

For American common-law authority, Abbot adverts to several cases, including three from New York: *Robinson v Beard* (140 NY 107 [1893]), *Gomez v Gomez* (147 NY 195 [1895]) and *Hoff v Royal Metal Furniture Co.* (117 App Div 884 [2d Dept 1907], *affd* 189 NY 555 [1907]). As Judge Graffeo points out in her dissent, however, at the time these three cases were decided, New York had a *statutory* rather than a common-law rule against perpetuities. This statutory rule was "narrowly" applied and excluded options (dissenting op at 284; *see also Symphony Space*, 88 NY2d at 478 ["(P)rior to 1965, New York's narrow statutory rule against remote vesting did not encompass options"], citing *Buffalo Seminary v McCarthy*, 86 AD2d 435, 443 [4th Dept 1982], *affd* 58 NY2d 867 [1983]). As a result, New York courts were not called upon to decide whether the rule against perpetuities was an obstacle to enforcing the options to renew in *Robinson*, *Gomez* and *Hoff*. In any event, the options were appurtenant to the leases in each of these cases: *Gomez* and *Robinson* involved options for successive terms of a period of years; *Hoff*, like *Bridges*, involved a perpetual option to renew.*

Similarly, Professor Leach comments that in the United States it was "well settled that *perpetual* options to *renew* leases have

---

* All of the cases cited by Abbot from states other than New York involved construction of leases with covenants for perpetual renewal (*see Banks v Haskie*, 45 Md 207 [1876]; *Boyle v Peabody Hgts. Co.*, 46 Md 623 [1877]; *Blackmore v Boardman*, 28 Mo 420 [1859]; *Diffenderfer v Board of President, etc., of St. Louis Pub. Schools*, 120 Mo 447, 25 SW 542 [1894]; *Drake v Board*

always been held valid" (Leach, *Perpetuities in a Nutshell*, 51 Harv L Rev 638, 662 [1938] [first emphasis added; second emphasis in original]; *see also* Note, *Options and the Rule against Perpetuities*, 13 U Fla L Rev 214, 220 [1960] ["American jurisdictions today will uniformly protect the option appendant to purchase and the option appendant to renew from the Rule against Perpetuities"]; *Camerlo v Howard Johnson Co.*, 710 F2d 987, 991 [3d Cir 1983] [holding that a perpetual lease option was valid under Pennsylvania law and noting that "(t)he weight of authority elsewhere holds that, absent a statutory prohibition, a perpetual lease or a right to perpetual renewal of a lease does not violate the (rule against perpetuities) or create a restraint on alienation," citing Abbot, *Leases and the Rule Against Perpetuities* (27 Yale LJ 878, 883)]). The two cases adduced by the majority—*Hoff* and *Burns v City of New York* (213 NY 516 [1915])—both deal with perpetual options to renew a lease.

Finally, the majority opines that "an option to renew a lease . . . is exercisable pursuant to the lease agreement and, thus, *inherently appurtenant*" (majority op at 278 [emphasis added]). But there is no reason why an option to renew might not originate in an instrument other than the lease (as was the case with the option to purchase in *Symphony Space*); or be exercisable after the lease has expired (as was apparently the case in *Warren St. Assoc. v City Hall Tower Corp.* [202 AD2d 200 (1st Dept 1992), *appeal discontinued* 84 NY2d 865 (1994)]), or by a former tenant no longer in possession (as hypothesized by Judge Graffeo in her dissent). We have consistently held that "options in real estate are subject to the statutory" rule against perpetuities (*Symphony Space*, 88 NY2d at 477, citing *Wildenstein & Co. v Wallis*, 79 NY2d 641, 648 [1992]); and have applied the three-part test in *Symphony Space* to assess the enforceability of a lease where the holder's interest may vest beyond the perpetuities period. The reason put forward by the majority to depart from this precedent and create a blanket exception from the rule against perpetuities for *all* options to renew leases— that they were historically considered to be exempt from or outside the scope of the rule—is simply not supported by the authorities cited.

*of Educ. of St. Louis*, 208 Mo 540, 106 SW 650 [1907]; *Thaw v Gaffney*, 75 WVa 229, 83 SE 983 [1914]; *see also Garner v Gerrish*, 63 NY2d 575, 581 [1984] [remarking that *Hoff* illustrates that perpetual leases "will not be enforced unless the lease clearly grants to the tenant or his successors the right to extend beyond the initial term by renewing indefinitely"]).

## II.

In *Symphony Space,* we held that an option is appurtenant to a lease and therefore does not violate the rule against perpetuities when it (1) "originates in one of the lease provisions," (2) "is not exercisable after lease expiration," and (3) "is incapable of separation from the lease" (88 NY2d at 480). The only issue that the parties dispute in this case is whether the tenant's renewal options were exercisable after lease expiration.

The parties agree that, absent notice, the lease provides for month-to-month possession following the initial 14-year term. During this possession, the lease creates asymmetric barriers to terminating the landlord-tenant relationship. The tenant only needs to give a one-month notice before vacating. But the landlord is limited to triggering a 60-day notice period, during which the tenant must choose between exercising a 10-year renewal option or terminating the tenancy. The lease also specifies many other rights and responsibilities during any month-to-month tenancy under the lease. For example, the tenant must maintain insurance covering at least $500,000 in property damage, at the tenant's expense.

Notably, *Symphony Space* interprets the rule against perpetuities to prohibit renewal options exercisable after a "lease" expires, not after a "term" in a lease expires. Here, "term" has the meaning ascribed by the lease—i.e., " 'term of this lease' or words of similar import" means "the initial term and any renewal term in respect to which Lessee has exercised its right of renewal"—and makes no mention of monthly terms. Thus, "term" refers to the initial 14-year period and exercised 10-year options.

This definition plays a useful role in the lease. For example, in section 1.3, the lease states that "each renewal option term shall commence on the first day of the calender month immediately following the expiration of the immediate preceding *term* of this lease" (emphasis added). Because 10-year renewal periods do not begin each month, it is clear that "immediate preceding term" refers only to the initial term and renewal terms—just as the lease defines the word "term." The parties needed a word or phrase to represent the 14-year and exercised 10-year periods in order to lay their agreement out in a readable contract. There are many examples of this throughout the lease. The drafters did the sensible thing when creating a shorthand phrase for use in a contract: they offered a definition within that same instrument.

The Appellate Division read the relevant language to mean *"This Lease* only includes the initial 14-year period and exercised 10-year options." As a result, that court concluded that the option was not appurtenant to the lease because the parties did not expressly state that the lease encompassed the rights and responsibilities that the lease itself obliges after expiration of the initial 14-year term. This was error. Accordingly, like Supreme Court, I would hold the renewal option to be appurtenant to the lease, and would reverse the Appellate Division on that basis.

GRAFFEO, J. (dissenting). I write separately because I believe that the majority's broad rule exempting all options to renew leases from the statutory rule against perpetuities cannot be reconciled with the text of EPTL 9-1.1 (b) and is inconsistent with the analytical framework that we adopted in *Symphony Space v Pergola Props.* (88 NY2d 466 [1996]).

The rule against perpetuities has been codified in New York since the early 1800s (*see id.* at 475). It is premised on the belief that "it is socially undesirable for property to be inalienable for an unreasonable period of time" (*id.*). As a result, the rule's purpose is " 'to ensure the productive use and development of property by its current beneficial owners by simplifying ownership, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability' " (*id.*, quoting *Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156, 161 [1986]).

The majority correctly observes that, in the early twentieth century, we held that an option to renew a lease was outside the scope of New York's rule against perpetuities if the lease clearly manifested an intent to create a right to renew in perpetuity (*see e.g. Burns v City of New York*, 213 NY 516, 520 [1915]; *Hoff v Royal Metal Furniture Co.*, 117 App Div 884 [2d Dept 1907], *affd* 189 NY 555 [1907]; *see generally* Leach, *Perpetuities in a Nutshell*, 51 Harv L Rev 638, 662 [1938]). By the early 1900s, New York had a statutory rule against perpetuities, but it was drafted so narrowly that it covered "only contingent remainders on terms of years and fees limited upon prior fees upon contingencies" (*Buffalo Seminary v McCarthy*, 86 AD2d 435, 440 [4th Dept 1982], *affd* 58 NY2d 867 [1983], citing, inter alia, Real Property Law §§ 46, 50, formerly 1 Rev Stat of NY, part II, ch I, tit II, §§ 20, 24 [1st ed]; *Matter of Wilcox*, 194 NY 288, 298

[1909]).[1] Because an option to renew a lease was not encompassed within these two categories of property interests, the decisions in *Burns* and *Hoff* were consistent with the statutes then in effect.

The more widely accepted American common law at that time, in contrast, utilized a broader definition of the rule against perpetuities: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest" (*Buffalo Seminary*, 86 AD2d at 441 n 4 [internal quotation marks omitted]). On its face, the American rule covered all interests in real property, including options and leases. In 1965, the Legislature recognized this principle when it enacted Real Property Law former § 43 with the specific intent "to incorporate the American common-law rules governing perpetuities" and thereby expanded the rule beyond the restrictive reach previously applied (*Symphony Space*, 88 NY2d at 478).

EPTL 9-1.1 (b) is the current version of New York's rule against perpetuities. It was enacted in 1966 and similar to its predecessor, the statute provides that "[n]o estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved." We have determined on several occasions that section 9-1.1 (b) applies to options in real estate (*see e.g. Symphony Space*, 88 NY2d at 477 ["It is now settled in New York that, generally, EPTL 9-1.1 (b) applies to options"]; *Wildenstein & Co. v Wallis*, 79 NY2d 641, 648 [1992] ["the rule (is) applicable to options in real estate transactions"]; *Buffalo Seminary*, 86 AD2d at 442 ["options are within the New York rule"]).

Based on this history, I do not believe that options to renew leases should be categorically exempt from EPTL 9-1.1 (b). The majority reasons that "because the rule against perpetuities has not applied to options to renew leases under the American

---

**1.** Both section 20 of the cited provision of the first Revised Statutes and former section 46 of the Real Property Law stated that

> "[a] contingent remainder shall not be created on a term of years, unless the nature of the contingency on which it is limited, be such that the remainder must vest in interest, during the continuance of not more than two lives in being at the creation of such remainder, or upon the termination thereof."

Section 24 of the cited provision of the first Revised Statutes and former section 50 of the Real Property Law applied this standard to the other type of property interest described in *Buffalo Seminary*.

common law . . . it follows that options to renew leases also fall outside of the scope of EPTL 9-1.1 (b)" (majority op at 277). To the contrary, there was no common-law principle in New York— the early twentieth century decisions that the majority relies on were grounded on the absence of a statutory prohibition that applied to perpetual leases (*see generally Buffalo Seminary*, 86 AD2d at 443). *Buffalo Seminary* made this very point (*see id.*).

This Court's pre-1965 authorities were superceded when the Legislature adopted the American rule that covered all interests in real property and did not contain an exception for an option to renew a lease. *Symphony Space, Wildenstein* and *Buffalo Seminary* emphasized that the current statute—EPTL 9-1.1 (b)—applies to all real estate options. As Judge Read observes in her concurrence, the authorities relied on by the majority discuss perpetual lease renewals, which are not at issue in this case. I therefore defer to the language of the statute and this Court's prior discussions on the applicability of the rule against perpetuities to options on real estate in holding that an option to renew a lease is subject to EPTL 9-1.1 (b).

In *Symphony Space*, however, we recognized a limited exception to the strict application of the statutory rule against perpetuities for certain "options appurtenant" to a lease. We described an option appurtenant as one that (1) "originates in one of the lease provisions," (2) "is not exercisable after lease expiration" and (3) "is incapable of separation from the lease" (88 NY2d at 480). An option appurtenant "is valid even though the holder's interest may vest beyond the perpetuities period" because it "encourage[s] the possessory holder to invest in maintaining and developing the property by guaranteeing the option holder the ultimate benefit of any such investment" and "thus further[s] the policy objectives underlying the rule against remote vesting" (*id.*). Both courts below correctly employed the option appurtenant exception as the applicable legal principle in this case and other courts that have dealt with options to renew leases have used similar reasoning (*see e.g. Double C Realty Corp. v Craps, LLC*, 58 AD3d 480 [1st Dept 2009]; *Warren St. Assoc. v City Hall Tower Corp.*, 202 AD2d 200 [1st Dept 1994], *appeal withdrawn* 84 NY2d 865 [1994]).

There are important reasons why our Court should adhere to this limited exception to EPTL 9-1.1 (b) instead of creating a new category of interests in real property immunized from the rule against perpetuities. First, an option to renew a lease, whether for successive periods of time or in perpetuity, does not

have to be contained in the lease itself and may instead be created in a separate written document executed by the parties, perhaps after the lease has commenced or prior to expiration of the lease. If so, it could be drafted so that the ability to exercise the option is independent from the lease and unaffected by the tenant's nonperformance (*see Symphony Space*, 88 NY2d at 480). Since this arrangement would not qualify as an option appurtenant under *Symphony Space*, the majority is incorrect when it states that an option to renew a lease is always "exercisable pursuant to the lease agreement and, thus, inherently appurtenant to the lease" (majority op at 278).

Second, even if an option is set forth in a lease, it could be worded to allow the option to be exercised after the initial term of the lease has expired. This, of course, would provide a disincentive to the property owner to expend money for improvements to the leased space after the expiration of a tenancy since the option holder could wait until improvements were completed before exercising the option and retaking possession of the improved property at the price that was predetermined in the former lease. It would also impose a significant impediment to the owner's ability to sell the property at a fair market price because the tenant would have the power to resurrect the expired lease (if the required renewal notifications are not issued by the owner), thereby impeding a potential purchaser's ability to use and develop the property. The rule against perpetuities was designed to deter such barriers to transferability (*see Symphony Space*, 88 NY2d at 480-481).

These are just examples of the reasons why I believe *Symphony Space* presciently articulated the limited, three-prong "options appurtenant" exception to EPTL 9-1.1 (b). Applying that test to the facts of this case, the option to renew in the lease at issue violates the statutory rule against perpetuities for the reasons stated by the Appellate Division: the lease expressly provided that it would expire and the tenancy would become month-to-month if the renewal provisions were not exercised before the end of the lease's term; once that occurred, each month-to-month tenancy did not extend the period of the lease terms (*see 120 Bay St. Realty Corp. v City of New York*, 44 NY2d 907, 909 [1978]; *Kennedy v City of New York*, 196 NY 19, 23-24 [1909]); and the option nevertheless permitted the tenant to renew the lease after it had expired. The majority acknowledges this fact, noting the parties' agreement that the "renewal option could be exercised even after the original lease term had

expired" (majority op at 275). Under the *Symphony Space* test, I conclude that the option is void.[2]

Consequently, I would affirm the order of the Appellate Division.

Chief Judge LIPPMAN and Judges CIPARICK, SMITH and PIGOTT concur with Judge JONES; Judge READ concurs in result in a separate opinion; Judge GRAFFEO dissents and votes to affirm in another opinion.

Order reversed, etc.

---

2. I would also hold that the tenant's argument premised on EPTL 9-1.3 is meritless.